**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

KEVIN COIT,                                :
    **Plaintiff**                        :          No. 1:19-cv-02036
                                         :
    **v.**                               :          (Judge Kane)
                                         :
JP LUTHER, <u>et</u> <u>al.</u>,           :
    **Defendants**                       :

## <u>MEMORANDUM</u>

On November 27, 2019, <u>pro se</u> Plaintiff Kevin Coit ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants JP Luther ("Luther"), Lisa Hollibaugh ("Hollibaugh"), C. Wakefield ("Wakefield"), Rivello ("Rivello"), Sunderland ("Sunderland"), Swissher ("Swissher"), K. Grassmyer ("Grassmyer"), C. Shope ("Shope"), E. Stombaugh ("Stombaugh"), Ellenberger ("Ellenberger"), Dickson ("Dickson"), T. Dell ("Dell"), J. Wasko ("Wasko"), D. Williams ("Williams"), C. Garman ("Garman"), B. Fisher ("Fisher"), Ralph ("Ralph"), Debra Jadlocki ("Jadlocki"), and Szelewski ("Szelewski").[1]  (Doc. No. 1.)  On December 5, 2019, Plaintiff filed 373 pages of exhibits to his complaint.  (Doc. No. 10.)  Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint (Doc. No. 23) for failure to allege plausible Eighth Amendment claims against them.  The motion is fully briefed and ripe for disposition.  For the following reasons, the Court will grant in part and deny in part the motion to dismiss. Defendants, however, have not addressed Plaintiff's remaining claims in their motion to dismiss.

---

[1] Plaintiff initially named Wakefiled, Saunderland, Jadlock, and Selewski as Defendants in this matter.  Defendants' filings, however, reflect that the proper spellings of these Defendants' names are those set forth above.  The Court, therefore, will direct the Clerk of Court to amend the docket in the above-captioned case to reflect the proper spelling.

Accordingly, pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"),[2] the Court will screen Plaintiff's complaint and partially dismiss it with leave to amend.

## I.   BACKGROUND

Plaintiff filed his complaint while he was incarcerated at SCI Smithfield, raising claims regarding events that occurred during his incarceration there.  (Doc. No. 1 at 2.)  Plaintiff alleges that on May 31, 2018, he "suffered from one of his many mental disorders."  (Id. at 3.)  Plaintiff told two corrections officers that he wanted to kill himself and showed those officers "cut marks" on his arms.  (Id.)  Plaintiff requested "medical and mental health treatment [but] both request[s] went unanswered."  (Id.)  Plaintiff alleges that instead of providing help, Defendant Dickson "only encouraged [his] self[-]harm despite Plaintiff's extensive suicide history."  (Id.)  Plaintiff maintains that later that day, he "placed a noose around his neck and attempted to hang himself[,] leaving a burn mark around [his] neck."  (Id.)

On June 16, 2018, Plaintiff "was again feeling suicidal and wanting to kill himself."  (Id.)  He began to cut his wrist and neck with a sharpened staple.  (Id.)  Plaintiff showed Defendants Dell and Wasko and requested medical and mental health treatment.  (Id.)  He maintains that Defendants Dell and Wasko "stated save us the trouble."  (Id.)  Plaintiff indicated that he would file a grievance, and Defendants Dell and Wasko "stated that would not be wise and things can only get a lot worse."  (Id.)  Plaintiff alleges he engaged in self-harm again on June 26, 2018 and that his request for mental health treatment was denied.  (Id.)

On February 8, 2019, Plaintiff alleges that he "received an inmate appeal for misconduct."  (Id.)  Plaintiff avers that he had received a misconduct for destroying state

---

[2] See The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

property while engaged in self-harm despite a Department of Corrections ("DOC") policy stating that "inmates who destroy state property and engage in self harm will not be issued a misconduct." (Id.)  Plaintiff alleges that Defendant Luther concluded that Plaintiff's cuts did not constitute a serious suicide attempt. (Id.)  On February 11, 2019, Plaintiff spoke to Defendant Swissher about Defendant Luther "giving subordinates orders that Plaintiff['s] self[-]injury is not a serious matter and thus does not require attention." (Id. at 4.)  Plaintiff maintains that Defendant Swissher agreed with Defendant Luther and "stated nothing will be done." (Id.)

On March 21, 2019, Plaintiff and another inmate were engaging in self-harm when C/O Cantrell conducted security rounds. (Id.)  Plaintiff avers that nothing was done to stop the self-harm. (Id.)  On March 22, 2019, Plaintiff raised "these concerns to Defendant Hollibaugh who stated just leave it alone Coit." (Id.)  On May 4, 2019, Plaintiff "was feeling suicidal" and expressed his feelings to Defendant Williams. (Id.)  He avers that Defendant Williams did nothing to provide Plaintiff mental health treatment. (Id.)  Later that day, Defendant Williams was conducting security rounds when Plaintiff showed him that he had been using a staple to mutilate himself and cut his wrist. (Id.)  Plaintiff avers that during that time, Defendant Ralph "approached [his] door[, saw] wounds[,] and stated you have to go deeper Mr. Coit then we will care." (Id.)

Plaintiff avers further that at some time between March and May of 2019 Defendants Luther, Rivello, Wakefield, Garman, Sunderland, Fisher, and Swissher had a meeting in which they determined that Plaintiff's acts of self-harm should not be taken seriously because Plaintiff was only trying to be manipulative. (Id.)  Plaintiff alleges that he learned of this meeting from Lieutenant Morgan, Lieutenant Moore, and several corrections officers assigned to the Behavioral Management Unit. (Id.)

On July 28, 2019, Plaintiff told Defendant Shope that he was hearing voices telling him to kill himself. (Id. at 5.) Plaintiff avers that Defendant Shope "only encouraged Plaintiff to do so." (Id.) Plaintiff was left inside of his cell "for hours cutting [his] wrists with a staple." (Id.) Plaintiff also wrote on the walls with blood and threw blood on the window of his cell. (Id.) Plaintiff avers that staff failed to provide treatment or respond to him because of Defendants Luther, Rivello, Wakefield, Garman, Sunderland, Fisher, and Swissher "telling them to ignore Plaintiff during bouts of depression and suicide attempts." (Id.) On August 5, 2019, Plaintiff told Defendants Wakefield, Sunderland, Luther, and Fisher that he was suicidal. (Id.) Defendant Luther "stated they did not care because they did not have to deal with Plaintiff." (Id.) Later, at approximately 2:00 p.m., Defendant Fisher approached Plaintiff's cell, and Plaintiff showed him that he had cut his wrists and the walls were covered in blood. (Id.)

On August 9, 2019, Plaintiff was seen by medical staff, including Defendant Swissher, because of his placement in a Psychiatric Observation Cell ("POC") for suicide attempts. (Id.) Plaintiff avers that medical staff determined that he needed further treatment than what was offered at the Behavioral Management Unit at SCI Smithfield. (Id.) On August 12, 2019, Plaintiff was discharged from the POC. (Id.) When he was placed back into his cell, he began to cut his wrist with a razor provided by staff. (Id.) Plaintiff was again placed in the POC "but no mental health treatment was provided during this period." (Id.) Plaintiff avers that instead of providing treatment, staff "punished [him] for exhibiting mental issues and retaliated [against him] for filing grievances and lawsuits." (Id.)

On August 21, 2019, Plaintiff told Defendant Fisher that he was suicidal and was cutting himself. (Id.) Plaintiff avers that nothing was done to stop him. (Id.) The next day, Plaintiff told Defendants Stombaugh and Fisher that he was feeling depressed and suicidal. (Id. at 6.)

Plaintiff began to cut himself with a razor and avers that he "was left to bleed for at least 30 minutes allowing [him] to cover [his] whole cell with blood." (Id.) Plaintiff "laid down and ceased self[-]harm due to lightheadedness and dizziness." (Id.) On August 23, 2019, Lieutenant Morgan came to Plaintiff's cell and told Plaintiff to give him the razor. (Id.) Plaintiff "lied and told Morgan that there was no razor." (Id.) Plaintiff avers that he was then placed into a restraint chair "despite the fact that [he] was doing nothing at this point." (Id.) Plaintiff maintains that he was later released from the restraint chair "only to be allowed to resume self[-]harm." (Id.)

On September 14, 2019, Plaintiff was in his cell while Defendant Stombaugh was passing out meals. (Id.) Plaintiff avers that Defendant Stombaugh got verbally aggressive and began making threats because Plaintiff had filed a grievance concerning what occurred on August 22, 2019. (Id.) Later that day, Certified Peer Specialist Williams came to Plaintiff's cell to "resolve the issue about not getting meal[s]." (Id.) Plaintiff avers that multiple corrections officers brought meals to his cell door but refused to feed Plaintiff because of Plaintiff's grievance activity. (Id.) According to Plaintiff, he was standing at the door of his cell when an unnamed Defendant "administered O/C [spray] for no reason." (Id.)

On October 22, 2019, Plaintiff told Defendant Shope that he was suicidal. (Id. at 7.) Plaintiff claims that Defendant Shope ignored him, so he covered his cell door window to get a lieutenant to come and take him to the POC. (Id.) Plaintiff alleges that instead of getting the lieutenant, Defendant Shope administered O/C spray. (Id.) The lieutenant arrived after Defendant Shope used O/C spray. (Id.) Plaintiff was placed in a strip cage but refused a strip search. (Id.) He avers that he was "[gassed] by Defendant Shope pursuant to orders from Lieutenant Moore. (Id.) Plaintiff claims that he was not acting aggressively when this force was

used.  (Id.)  Later that day, when Plaintiff was back in his cell, he began to bite holes in his arms.

(Id.)  He avers that Lieutenant Moore was notified but that nothing was done to stop him from

harming himself.  (Id.)  Plaintiff ultimately hit an artery by biting a hole in his arm.  (Id.)  At

approximately 10:30 p.m., an unknown corrections officer was conducting a security round and

saw that Plaintiff's cell was covered in blood.  (Id.)  He called Lieutenant Glassko, who called

for medical.  (Id.)  Plaintiff avers that he was taken to medical but refused treatment because he

was suicidal.  (Id.)  However, he was not placed in the POC for mental health treatment.  (Id.)

Instead, Plaintiff claims, he was placed in a cell and "left bleeding all night."  (Id. at 8.)

On October 23, 2019, Defendant Williams noticed that Plaintiff's cell was covered in

blood and that the sink was filled with blood.  (Id.)  He called Lieutenant Morgan and Plaintiff

was removed from his cell and placed in a strip cage.  (Id.)  Plaintiff avers that he was later

placed in the POC "due to extreme blood loss" but that he "still refused medical treatment."  (Id.)

Plaintiff claims that he was "profusely bleeding" until approximately 9:00 a.m.  (Id.)  At that

time, an unknown lieutenant came to the POC to place Plaintiff in a restraint chair.  (Id.)

Plaintiff maintains that he "complied but was becoming delusional due to blood loss and

aggressive due to blood loss."  (Id.)  Plaintiff avers that the officers who placed him in the

restraint chair made the straps so tight that he could not feel his extremities, and that he had

bruising from the straps on his arms, buttocks, and backs of his ankles.  (Id.)  Plaintiff claims that

he was held in the restraint chair "for nine hours with no food and no exercise."  (Id.)

Ultimately, Plaintiff received an IV and nine (9) stitches for his wound.  (Id.)  He claims that he

lost consciousness several times that day because of blood loss.  (Id. at 9.)

On October 31, 2019, Plaintiff filed a grievance regarding what occurred on October 22,

2019.  (Id. at 8.)  He avers that Defendant Fisher "took retaliatory actions on other inmates and

gave Plaintiff a copy of inmates['] calls to family and another inmate['s] legal mail."  (Id.)

Plaintiff claims that Defendant Hollibaugh retaliated against him by not processing his

grievance.  (Id.)  On November 8, 2019, Plaintiff asked security to preserve video footage for

October 31, 2019 "for evidence of placement of [his] grievance in [the] grievance box."  (Id. at

9.)

Plaintiff next avers that ever since his arrival at SCI Smithfield on March 31, 2018,

Defendants Hollibaugh, Grassmyer, and Jadlocki "have been hindering Plaintiff's grievance

process."  (Id.)  On August 22, 2019, Plaintiff maintains that Defendant Hollibaugh retaliated

against Plaintiff for filing grievances by placing him on a grievance restriction "because

grievance officers [were] stating Plaintiff['s] suicide attempts were frivolous."  (Id.)  According

to Plaintiff, this restriction is preventing him from filing a grievance about access to the law

library and how there is no keyboard available to do legal work.  (Id.)  Plaintiff alleges further

that Defendants have retaliated against him for filing grievances and lawsuits by not allowing

him access to the DOC's abuse hotline and other measures used to report violations.  (Id. at 10.)

Plaintiff alleges that Defendant Fisher is "intentionally singling [him out] due to

grievances and lawsuit[s]."  (Id.)  According to Plaintiff, Defendant Fisher "has issued [him]

misconducts for violations that all inmates do."  (Id.)  For example, Plaintiff alleges that

Defendant Fisher wrote him up for misuse of the phone and avers that other prisoners misuse the

phone but are not written up for it.  (Id.)  He avers that Defendant Fisher gave him a copy of the

phone log to "create conflict between Plaintiff and other prisoners."  (Id.)  Plaintiff maintains

that on October 20, 2019, Defendant Fisher circulated a memo telling staff in the Behavioral

Management Unit that Plaintiff may not use the abuse hotline.  (Id.)  Plaintiff asserts that this

restriction was not approved by Defendants Hollibaugh, Luther, Rivello, Wakefield, and

7

Sunderland and that Defendant Fisher "took it upon himself to place Plaintiff on such restriction

in order to retaliate." (Id.)  Plaintiff avers further that Defendant Fisher has placed on him a

"permanent spit hood," which causes Plaintiff to become depressed because other inmates call

him "Hannibal Lecter." (Id. at 11.)  Plaintiff alleges further that Defendant Stombaugh has

retaliated against him for filing grievances by sexually harassing him. (Id.)  Finally, Plaintiff

states that on November 4, 2019, he attended a rule violation hearing. (Id. at 9.)  He avers that

Defendant Szelewski violated his due process rights and "stated during the sanction that[] it['s]

all fair in love and war that's what happens when people file grievances and lawsuits." (Id.)

Based upon the foregoing, Plaintiff raises the following claims for relief: (1) First

Amendment violations regarding retaliation and access to the courts; (2) Eighth Amendment

violations regarding failure to protect, unconstitutional conditions of confinement, deliberate

indifference to medical needs, and excessive force; and (3) Fourteenth Amendment due process

and equal protection violations. (Id. at 12.)  Plaintiff also raises a claim pursuant to the

Americans with Disabilities Act ("ADA"). (Id.)  Plaintiff seeks unspecified injunctive relief as

well as damages. (Id. at 20.)

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a

plausible right to relief. See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled

to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure

12(b)(6) for its "failure to state a claim upon which relief can be granted."  <u>See</u> Fed. R. Civ. P.

12(b)(6).

       When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all

factual allegations in the complaint and all reasonable inferences that can be drawn from them,

viewed in the light most favorable to the plaintiff.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679

(2009); <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 314 (3d Cir. 2010).  To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims

are facially plausible.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 678; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203,

210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the

defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

not 'show[n]' – 'that the pleader is entitled to relief.'"  <u>See</u> <u>Iqbal</u>, 556 U.S. at 679 (citing Fed. R.

Civ. P. 8(a)(2)).

       Accordingly, the Third Circuit has identified the following steps that a district court must

take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to

state a claim; (2) identify any conclusory allegations contained in the complaint that are "not

entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual

allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  <u>See</u>

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation

marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to

dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached

to the complaint, matters of public record, as well as undisputedly authentic documents if the

complainant's claims are based upon these documents."  <u>See</u> <u>Mayer v. Belichick</u>, 605 F.3d 223,

230 (3d Cir. 2010) (citing <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of <u>pro se</u> prisoner litigation, the court must be mindful that a document filed <u>pro se</u> is "to be liberally construed."  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  A <u>pro se</u> complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972).

**B.      Screening and Dismissal of Prisoner Complaints**

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  <u>See</u> 28 U.S.C. § 1915A(a).  If a complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss the complaint.  <u>See</u> 28 U.S.C. § 1915A(b)(1).  District courts have a similar screening obligation with respect to actions filed by prisoners proceeding <u>in forma pauperis</u> and prisoners challenging prison conditions.  <u>See</u> 28 U.S.C. § 1915(e)(2)(B) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . is frivolous or malicious [or] fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action is frivolous, malicious, [or] fails to state a claim upon which relief can be granted.").

A complaint is frivolous if it lacks an arguable basis either in law or fact.  See Mitchell v. Horn, 381 F.3d 523, 530 (3d Cir. 2003) (citing Neitzke v. Williams, 490 U.S. 319, 327-28 (1989)).  When deciding whether a complaint fails to state a claim on which relief may be granted, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1), § 1915(e)(2)(B)(ii), or § 1997e(c)(1) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to § 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").

### C.      Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the

conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

### A. Claims Against Defendant Ellenberger

Defendants assert that any claims against Defendant Ellenberger are subject to dismissal because Plaintiff's complaint contains no allegations against him. (Doc. No. 29 at 5.) The Court agrees with Defendants. Plaintiff names Defendant Ellenberger in the caption, but there are no averments related to him in the body of the complaint. Plaintiff's complaint, therefore, is subject to dismissal with respect to Defendant Ellenberger for that reason alone. See Robinson v. Wheary, No. 1:16-cv-2222, 2017 WL 2152365, at *1-2 (M.D. Pa. May 17, 2017) (dismissing complaint where "the caption of the complaint name[d] numerous individual defendants, [but] contain[ed] no well-pleaded factual averments relating to these specific defendants in the body of the complaint").

### B. First Amendment Claims

#### 1. Retaliation Claims

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." See id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." See id. (quoting Suppon v. Dadonna,

2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  See id. at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997).  If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  See Rauser, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'"  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016).  If the prison officials can make this showing, it defeats the retaliation claim.  See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

In his complaint, Plaintiff alleges that Defendants Stombaugh, Hollibaugh, Grassmyer, Jadlocki, and Fisher retaliated against him for engaging in protected activity by filing grievances and lawsuits.  (Doc. No. 1.)  It is well-settled that inmates engage in protected activity when they file grievances and lawsuits.  See Mearin v. Vidonish, 450 F. App'x 100, 102 (3d Cir. 2011).  Plaintiff suggests that Defendants took adverse action by placing him on grievance restriction, denying him meals, denying him access to the abuse hotline, and issuing various misconducts.

In light of these allegations, the Court concludes that Plaintiff has set forth plausible First Amendment retaliation claims.  Accordingly, he may proceed on these claims at this time.

### 2.    Access to the Courts Claim

Plaintiff also appears to suggest that his First Amendment right to access the courts was violated because there were no keyboards in the law library to use for legal work.  (Doc. No. 1 at 9.)  It is well-settled that "prisoners have a constitutional right of access to the courts."  See Bounds v. Smith, 430 U.S. 817, 821 (1977).  "In order to state a claim of the denial of access to the courts, a prisoner such as [Plaintiff] must allege that his efforts to pursue a legal claim were hindered and he suffered an actual injury."  Ross v. Clerk of Courts of Court of Common Pleas of Phila., 726 F. App'x 864, 865 (3d Cir. 2018) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)).  "[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement."  Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008).  A complaint raising an access to the courts claim "must describe the underlying claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  See Christopher v. Harbury, 536 U.S. 403, 416-18 (2002).

Plaintiff's complaint, as pled, fails to set forth a plausible access to the courts claim. Plaintiff fails to describe how the lack of keyboard in the law library prevented him from pursuing either a challenge to his sentence or a challenge to his conditions of confinement.  See Heath v. Link, 787 F. App'x 133, 136 (3d Cir. 2019) (concluding same regarding legal materials).  Moreover, Plaintiff has not alleged any facts about the merits of his underlying claims, let alone allege that he suffered an actual injury.  See Presbury v. Wetzel, 789 F. App'x 294, 295 (3d Cir. 2020) (concluding same).  Moreover, Plaintiff fails to allege that the named Defendants were the ones who denied him access to the courts.  See Rode v. Dellarciprete, 845

F.2d 1195, 1207 (3d Cir. 1988).  Accordingly, Plaintiff's access to the courts claim is subject to dismissal.

### C.    Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates.  An Eighth Amendment claim includes both objective and subjective components.  See Wilson v. Seiter 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component.  See id.  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  See id.

### 1.    Failure to Protect

Plaintiff vaguely suggests that Defendants violated his Eighth Amendment rights by failing to protect him.  (Doc. No. 1 at 12.)  While unclear, it appears that Plaintiff suggests that Defendant Fisher failed to protect him from assaults by other inmates by creating conflict between Plaintiff and those other inmates.  (Id. at 10).  The Eighth Amendment requires prison officials to "take reasonable measures to protect prisoners from violence at the hands of other prisoners."  See Farmer v. Brennan, 511 U.S. 825, 833 (1994).  An inmate raising a failure to protect claim must allege that a prison official both knew of and chose to disregard an "excessive risk to inmate health or safety."  See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2011) (citing Farmer, 511 U.S. at 837).  This knowledge requirement is subjective, "meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  See id.; see also Hamilton v. Leavy, 117 F.3d 742, 746 (3d

Cir. 1997).  In the instant case, however, Plaintiff has failed to allege facts suggesting that

Defendant Fisher (or any other named inmate) knew that other inmates posed a risk to Plaintiff

and disregarded that risk.  Accordingly, Plaintiff's failure to protect claims are subject to

dismissal at this time.

### 2.        Conditions of Confinement

Plaintiff also alleges that Defendants violated his Eighth Amendment rights by subjecting

him to unconstitutional conditions of confinement.  (Doc. No. 1 at 12.)  In order to state an

Eighth Amendment claim as to one's conditions of confinement, a plaintiff must allege that: "(1)

he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the

defendant-official was deliberately indifferent to that substantial risk to his health and safety, and

(3) the defendant official's deliberate indifference caused him harm."  See Bistrian v. Levi, 696

F.3d 352, 367 (3d Cir. 2015).  Conditions of confinement violate the Eighth Amendment if they,

"alone or in combination . . . deprive inmates of the minimal civilized measure of life's

necessities."  See id. at 347.  Such necessities include "adequate food, clothing, shelter, and

medical care."  See Farmer, 511 U.S. at 832.

Plaintiff vaguely alleges that he was denied meals by multiple corrections officers,

including Defendant Stombaugh.  (Doc. No. 1 at 6.)  "The deprivation of food constitutes cruel

and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's

necessities.'"  Berry v. Brady, 193 F.3d 504, 507 (5th Cir. 1999) (quoting Talib v. Gilley, 138

F.3d 211, 214 n.3 (5th Cir. 1998)).  "Whether the deprivation of food falls below this threshold

depends on the amount and duration of the deprivation."  Id.; see also Zanders v. Ferko, 439 F.

App'x 158, 160 (3d Cir. 2011) (concluding that the denial of lunch on one day and the denial of

breakfast and lunch the next day did not rise to the level of an Eighth Amendment violation).  In

the instant case, Plaintiff's complaint is devoid of facts regarding the amount and duration of the alleged deprivation of meals.  Accordingly, this claim is subject to dismissal at this time.

Plaintiff also appears to base his conditions of confinement claim on Defendants' alleged actions of failing to take steps to prevent him from injuring himself in his attempts to commit suicide.  To maintain such a claim, Plaintiff must set forth facts suggesting that (1) he "had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to [his] particular vulnerability."  See Hinton v. Mark, 544 F. App'x 75, 77 (3d Cir. 2013) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991)).[3]  In light of Plaintiff's allegations, the Court concludes that he has set forth a plausible Eighth Amendment claim regarding conditions of confinement, namely, the failure to respond to his vulnerability to suicide, against Defendants Dickson, Dell, Wasko, Swissher, Williams, Ralph, Luther, Rivello, Wakefield, Garman, Sunderland, Fisher, Shope, and Stombaugh.  Accordingly, Plaintiff will be allowed to proceed on this claim at this time.

### 3.    Deliberate Indifference to Medical Needs

To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004); Natale, 318 F.3d at 582.  The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) the plaintiff's objectively serious medical needs.

---

[3] While the Colburn court set forth this standard in terms of pretrial detainees, the Third Circuit has noted that the same standard may apply to convicted prisoners.  See Hinton, 544 F. App'x at 77 n.3 (citing Wolosyzn v. Cty. of Lawrence, 396 F.3d 314, 319 n.5 (3d Cir. 2005)).

See Farmer v. Brennan, 511 U.S. 825, 834, 837 (1994); Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." See Farmer, 511 U.S. at 837. Circumstantial evidence may establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. See Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (citing Farmer, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." See Spruill, 372 F.3d at 236. Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." See id. In light of Plaintiff's allegations, the Court concludes that he has set forth plausible Eighth Amendment claims regarding the denial of medical care against Defendants Dickson, Dell, Wasko, Swissher, Williams, Ralph, Luther, Rivello, Wakefield, Garman, Sunderland, Fisher, Shope, and Stombaugh. Accordingly, Plaintiff will be permitted to proceed on these claims at this time.

### 4.      Excessive Force

The Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where a[] [convicted] inmate challenges a prison official's use of force as excessive and unjustified." See Brooks v. Kyler, 204 F.3d 102, 105 (3d Cir. 2000).  The standard governing the Court's inquiry as to whether a plaintiff has a viable Eighth Amendment excessive force claim is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." See Giles v. Kearney, 571 F.3d 318, 326 (3d Cir. 2009) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  In making this determination, courts are tasked with evaluating the following factors:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

Brooks, 204 F.3d at 106 (quoting Whitley, 475 U.S. at 321).

In his complaint, Plaintiff alleges that on September 14, 2019, he was standing at his door "when defendant administered O/C for no reason at all."  (Doc. No. 1 at 6.)  Plaintiff, however, fails to identify the individual who administered O/C spray on that occasion.  Plaintiff maintains further that on October 22, 2019, Defendant Shope administered O/C spray right away instead of de-escalating a situation where Plaintiff had covered his cell window "to get a [lieutenant] to take [him]" to the POC.  (Id. at 7.)  Finally, Plaintiff alleges that on October 23, 2019, Officer Hoy and six (6) unknown individuals placed him in a restraint chair for nine (9) hours and tightened the straps to the point where Plaintiff could not feel his extremities and had bruising on his arms, buttocks, and the backs of his ankles.  (Id. at 8.)  Plaintiff, however, has not named Hoy

and the six (6) John Does as Defendants in the above-captioned case.  Thus, while Plaintiff can

proceed on his excessive force claim at this time, his claims regarding the use of excessive force

on September 14 and October 23, 2019 will be dismissed.

> ### D.     Fourteenth Amendment Claims

> #### 1.     Due Process Claims

Plaintiff appears to assert that Defendants Hollibaugh, Grassmyer, and Jadlocki violated

his Fourteenth Amendment due process rights by placing him on grievance restriction.  (Doc.

No. 1 at 9.)  Prisoners, however, do not have a constitutional right to a grievance procedure.  See

Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009).  "It follows, therefore, that placing a

prisoner on grievance restriction does not deprive him of a due process right because no

protected liberty interest is implicated."  See Rosado v. Virgil, No. 09-156, 2011 WL 4527067,

at *9 (W.D. Pa. Sept. 28, 2011).  Any due process claim based upon Plaintiff's placement on

grievance restriction is, therefore, subject to dismissal.

Plaintiff maintains further that Defendant Szelewski violated his due process rights on

November 4, 2019, during a disciplinary hearing, by "stat[ing] during the sanction that[] it['s] all

fair in love and war that['s] what happens when people file grievances and lawsuits."  (Doc. No.

1 at 9.)  The Supreme Court has recognized that "prison disciplinary proceedings are not part of a

criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not

apply."  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The Court, however, set forth five

requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an

impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3)

an opportunity to call witnesses and present documentary evidence, provided the presentation of

such does not threaten institutional safety or correctional goals; (4) assistance from an inmate

representative; and (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action.  See id.  These rights, however, apply only when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  See Sandin v. Conner, 515 U.S. 472, 484 (1995).  Without more facts regarding Plaintiff's disciplinary hearing and its outcome, the Court cannot conclude that Plaintiff has set forth a plausible procedural due process claim against Defendant Szelewski at this time.

Plaintiff may also be suggesting that Defendant Szelewski denied him due process for retaliatory reasons.  The Third Circuit has held that "[r]etaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest."  See Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000).  Such a procedural due process claim, however, requires threshold proof that the inmate was engaged in constitutionally protected conduct.  See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (citing Sandin, 515 U.S. at 486); see also Allah, 229 F.3d at 224.  However, even if the discipline is initiated in retaliation for a protected act, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports.  See Smith, 293 F.3d at 653-54; see also Thomas v. McCoy, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam) ("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports.").  Moreover, a retaliatory discipline claim fails when there is "some evidence" to support the determination.  See Nifas v. Beard, 374 F. App'x 241, 244 (3d Cir. 2010) (citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994)).  In the instant case, however, Plaintiff fails to allege that he did not have the opportunity to confront and challenge the allegedly

retaliatory misconduct report.  Thus, any retaliatory due process claim that he asserts against Defendant Szelewski is also subject to dismissal at this time.

### 2.      Equal Protection Claims

Plaintiff also appears to suggest that Defendant Fisher violated his equal protection rights by issuing Plaintiff misconducts for misuse of the phone and not issuing misconducts to other inmates for the same violations.  (Doc. No. 1 at 10.)  He maintains that Defendant Fisher "intentionally [singled him out] due to grievances and lawsuit[s]."  (Id.)  The Equal Protection Clause requires all persons "similarly situated" to be treated alike by state actors.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Traditionally, "[i]n order to establish a prima facie case of discrimination under the Equal Protection Clause, [plaintiffs] need[] to prove that they were members of a protected class [such as race or gender] and that they received different treatment than that received by similarly-situated individuals."  See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2002).

However, where a plaintiff alleges that he alone "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," he may raise a "class of one" equal protection claim.  See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008).  To maintain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment.  See id.  "[A]t the very least, to state a claim under [a class of one theory], a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Mosca v. Cole, 217 F. App'x 158, 164 (3d Cir. 2007).  In light of Plaintiff's allegations, the Court concludes that he has set forth a plausible

Fourteenth Amendment equal protection claim against Defendant Fisher.  Accordingly, Plaintiff will be allowed to proceed on this claim at this time.

  **E.**  **ADA Claims**

  Finally, Plaintiff vaguely suggests that Defendants' actions violated his rights under the ADA.  (Doc. No. 1 at 12.)  Title II of the ADA, "which prohibits 'a public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons."  See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12141 & 12132).  To maintain a claim under the ADA, Plaintiff must allege that "he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability."  See Furgess v. Pa. Dep't of Corr., 933 F.3d 285, 289 (3d Cir. 2019).

  While the Third Circuit has not addressed the issue precedentially, most courts "have held that Title II does not authorize suits against government officers in their individual capacities."  See Williams v. Hayman, 657 F. Supp. 2d 488, 502 (D.N.J. 2008); see also Bowens v. Wetzel, 674 F. App'x 133, 136 (3d Cir. 2017) (noting that "the District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA, which provides an additional basis to affirm the dismissal of this claim"); Matthews v. Pa. Dep't of Corr., 613 F. App'x 163, 169-70 (3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA does not provide for suits against state officers in their individual capacities").  Plaintiff, therefore, cannot maintain his ADA claims for damages against Defendants in their individual capacities.

  The Court must next consider Plaintiff's ADA claims against Defendants in their official capacities.  Plaintiffs may sue under Title II of the ADA for prospective injunctive relief against

state officials.  See Koslow v. Commonwealth, 302 F.3d 161, 179 (3d Cir. 2002) (noting that

"federal ADA claims for prospective injunctive relief against state officials are authorized by the

Ex Parte Young doctrine").  Although Plaintiff's complaint sets forth a detailed recitation of

facts, the complaint, as pled, does not specify how these facts demonstrate that he is a qualified

individual with a disability and that he "was precluded from participating in a program, service,

or activity, or otherwise was subject to discrimination, by reason of his disability."  See Furgess,

933 F.3d at 289.  Accordingly, any ADA claims against Defendants in their official capacities

are subject to dismissal at this time.

      **F.**    **Leave to Amend**

      Courts are cautioned that because of the applicable pleading standard, a plaintiff should

generally be granted leave to amend before dismissing a claim that is merely deficient.  See

Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for

liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper

decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal

quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [or] futility of the amendment."  See id.  The Court must also determine that a

proposed amendment would be futile if the complaint, as amended, would not survive a motion

to dismiss for failure to state a claim.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d

Cir. 2002).  Here, it is neither clear that amendment would be futile nor is there any basis to

believe to permit amendment would be inequitable with respect to Plaintiff's claims against

Defendant Ellenberger; First Amendment access to the courts claim; Eighth Amendment claims

regarding failure to protect, denial of meals, and the use of excessive force on September 14 and October 23, 2019; Fourteenth Amendment due process claim against Defendant Szelewski; and ADA claims against Defendants in their official capacities.  Accordingly, Plaintiff will be granted leave to file an amended complaint with respect to these claims.  However, for the reasons set forth above, it would be futile to grant Plaintiff leave to amend his Fourteenth Amendment due process claim against Defendants Hollibaugh, Grassmyer, and Jadlocki as well as his ADA claims against Defendants in their individual capacities.  Accordingly, those claims will be dismissed with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.  (Doc. No. 23.)  The motion will be granted with respect to Plaintiff's claims against Defendant Ellenberger and denied in all other respects.  Moreover, pursuant to 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii), Plaintiff's First Amendment access to the courts claim; his Eighth Amendment claims regarding failure to protect, denial of meals, and the use of excessive force on September 14 and October 23, 2019; his Fourteenth Amendment due process claim against Defendant Szelewski; and his ADA claims against Defendants in their official capacities will be dismissed without prejudice.  His Fourteenth Amendment due process claim against Defendants Hollibaugh, Grassmyer, and Jadlocki as well as his ADA claims against Defendants in their official capacities will be dismissed with prejudice.  Plaintiff will be granted leave to file an amended complaint with respect to his claims against Defendant Ellenberger; his First Amendment access to the courts claim; his Eighth Amendment claims regarding failure to protect, denial of meals, and the use of excessive force on September 14 and October 23, 2019;

his Fourteenth Amendment due process claim against Defendant Szelewski; and his ADA claims against Defendants in their official capacities.  An appropriate Order follows.