**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN COIT,** | : | |
| **Plaintiff** | : | **No. 1:19-cv-02036** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **JP LUTHER, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Presently before the Court for resolution is the issue of whether the remaining

defendants—<u>i.e.</u>, Defendants Luther, Wakefield, Rivello, Sunderland, Swissher, Shope,

Stombaugh, Dickson, Dell, Wasko, Williams, Garman, Fisher, and Ralph (collectively,

"Defendants")—have met their burden to establish the affirmative defense of Plaintiff Kevin

Coit ("Plaintiff")'s failure to exhaust administrative remedies in accordance with the Prison

Litigation Reform Act ("PLRA") before commencing suit in federal court.  For the reasons set

forth below, the Court finds that Defendants have met their burden to establish this affirmative

defense as it relates to some of Plaintiff's remaining claims.

**I.      BACKGROUND**

Plaintiff, a state prisoner in the custody of the Pennsylvania Department of Corrections

("DOC"), is currently incarcerated at State Correctional Institution Rockview in Bellefonte,

Pennsylvania.  He commenced the above-captioned action in November of 2019 by filing a pro

se complaint pursuant to the provisions of 42 U.S.C. § 1983 ("Section 1983"), concerning events

that allegedly occurred while he was incarcerated at State Correctional Institution Smithfield

("SCI Smithfield") in Huntingdon, Pennsylvania.  (Doc. No. 1.)  Named as defendants were

numerous individuals, all of whom appeared to be employed by the DOC and to have worked at

SCI Smithfield during the period of time relevant to Plaintiff's Section 1983 claims.  (<u>Id.</u>)

In his complaint, Plaintiff asserted various violations of his constitutional rights against these individuals.  (Id.)  However, following the completion of discovery and the Court's resolution of defendants' motion for summary judgment (Doc. Nos. 52, 53), the only remaining defendants are the ones named above, against whom the following Eighth Amendment solicitation-of-suicide claims remain pending:

A.  May 31, 2018 – against Defendant Dickson – Plaintiff claims that he told unnamed correctional officers that he wanted to kill himself, and he showed them the cuts on his arms.  Plaintiff then requested medical and mental health treatment. Defendant Dickson allegedly encouraged Plaintiff's self-harm. (Doc. Nos. 1 at ¶¶ 1–3; 71 at 1–2);

B.  June 16, 2018 – against Defendants Dell and Wasko – Plaintiff claims that: he told Defendants Dell and Wasko that he wanted to kill himself; he cut his wrist and neck with a staple; and asked for medical and mental health care, which was denied.  Defendants Dell and Wasko allegedly said, "save us the trouble[,]" and filing a grievance "would not be wise and things can only get a lot [sic] worse."  (Doc. Nos. 1 at ¶¶ 4–5; 71 at 2);

C.  May 4, 2019 – against Defendants Williams and Ralph – Plaintiff claims that he told Defendant Williams that he felt suicidal, but nothing was done to provide him with mental health treatment.  Plaintiff also claims that he cut himself with a staple and showed Defendants Williams and Ralph his cuts. Defendant Ralph allegedly said, "you have to go deeper Mr. Coit, then we will care."  (Doc. Nos. 1 at ¶¶ 11–12; 71 at 2);

D.  July 28, 2019 – against Defendants Shope, Luther, Rivello, Wakefield, Garman, Sunderland, Fisher, and Swissher – Plaintiff claims that he told Defendant Shope that he was hearing voices and trying to kill himself. Plaintiff alleges that Defendant Shope encouraged him to self-harm, and Plaintiff was left in his cell for hours, cutting his wrist with a staple and writing with blood on the walls and window. Plaintiff also claims that Defendants Luther, Rivello, Wakefield, Garman, Sunderland, Fisher, and Swissher were telling officers to ignore Plaintiff when he was depressed.  (Doc. Nos. 1 at ¶ 14; 71 at 2–3);

E.  August 5, 2019 – against Defendants Luther, Wakefield, Sunderland, and Fisher - Plaintiff claims that he told them that he was suicidal, but they said that they did not care because they did not have to deal with him. Plaintiff asserts that he showed Defendant Fisher that he cut his wrist and

that his walls were covered in blood, but nothing was done. (Doc. Nos.
1 at ¶ 15; 71 at 3);

F.   August 21, 2019 – against Defendant Fisher – Plaintiff claims that he
told Defendant Fisher that he was cutting his wrist, but nothing was done.
(Doc. Nos. 1 at ¶ 19; 71 at 3); and

G.   August 22, 2019 – against Defendants Stombaugh and Fisher – Plaintiff
claims that he told Defendants Stombaugh and Fisher that he was feeling
depressed and suicidal.  Plaintiff alleges that he cut himself with a razor
and that he was left to bleed for thirty (30) minutes, allowing him to
cover his whole cell with blood.  Plaintiff alleges that he lost so much
blood that he had to lay down and stop cutting due to dizziness.  (Doc.
Nos. 1 at ¶ 20; 71 at 3–4).

(Doc. Nos. 1; 71 at 1–4 (stipulating that these Eighth Amendment solicitation-of-suicide

claims are the only remaining claims in this action).)

After resolving defendants' motion for summary judgment, the Court referred this action

to the Court's Prisoner Litigation Settlement Program.  (Doc. No. 53.)  On February 8, 2022, the

court-appointed mediator reported that the parties failed to reach a settlement.  (Doc. No. 55.)

Shortly before the mediator filed his report, Plaintiff filed a motion seeking the appointment of

counsel.  (Doc. No. 54.)  On February 15, 2022, the Court issued an Order conditionally granting

Plaintiff's motion and directing the Clerk of Court to forward a copy of that Order to the Chair of

the Federal Bar Association's Pro Bono Committee.  (Doc. No. 56.)

Thereafter, on August 15, 2022, Leticia C. Chavez-Freed, Esquire,[1] entered her

appearance on behalf of Plaintiff (Doc. No. 60), and she subsequently requested a status

conference with the Court (Doc. No. 62).  The Court held a status conference with counsel on

November 9, 2022.  (Doc. No. 63.)  During that conference, the Court and counsel discussed,

among other things, the status of this case, whether the parties were amenable to mediation, and

---

[1]  The Court is appreciative of Attorney Chavez-Freed's pro bono representation of Plaintiff in
this action.

the issue of administrative exhaustion.  As to exhaustion, the Court had concluded at the summary judgment stage of this litigation that there was a genuine dispute of material fact as to whether the DOC's administrative remedy process was rendered unavailable to Plaintiff such that his alleged failure to exhaust available administrative remedies could be excused.  (Doc. No. 52 at 15–19.)  Thus, counsel agreed that an exhaustion hearing was necessary before scheduling a trial date for this matter.

On November 10, 2022, the Court issued an Order scheduling an evidentiary hearing and oral argument on all outstanding issues concerning administrative exhaustion.  (Doc. No. 65.) Prior to the hearing, the parties submitted Joint Stipulations (Doc. No. 71), wherein they stipulated that Plaintiff exhausted administrative remedies with respect to the following claims:

A.    May 4, 2019 – via Official Inmate Grievance Number 800605;

B.    July 28, 2019 – via Official Inmate Grievance Number 815279, with respect to Defendants Shope and Fisher; and

C.    August 5, 2019 – via Official Inmate Grievance Number 816373.

(Id. at 4.)  In addition, the parties stipulated that there is a dispute as to whether Plaintiff exhausted administrative remedies with respect to the following claims:

A.    May 31, 2018 – via Official Inmate Grievance Number 740549;

B.    June 16, 2018 – via Official Inmate Grievance Number 742409;

C.    July 28, 2019 – via Official Inmate Grievance Number 815279, with respect to Defendants Luther, Rivello, Wakefield, Garman, Sunderland, and Swissher;

D.    August 21, 2019 – via Official Inmate Grievance Number 819311; and

E.    August 22, 2019 – via Official Inmate Grievance Number 820783.

(Id.)

More specifically, Defendants argue that Plaintiff failed to: include the appropriate documentation in his appeal to the DOC's final level of review with respect to Grievance Number 740549, Grievance Number 742409, and Grievance Number 820783 (Doc. No. 77 at 20–23, 27–29); identify Defendants Luther, Rivello, Wakefield, Garman, Sunderland, and Swissher in Grievance Number 815279 (id. at 23–25); and appeal Grievance Number 819311 to the DOC's intermediate and final levels of review (id. at 25–27). In addition, Defendants contend that Plaintiff's failure to comply with the procedural rules of the DOC's administrative remedy process resulted in a procedural default of his claims in this Section 1983 action. (Id. at 21, 23, 25, 27, 29.) Defendants further contend that Plaintiff has failed to overcome the procedural default as he has not shown that administrative remedies were unavailable to him. (Id. at 21, 23, 27, 28.)

Plaintiff argues, however, that administrative remedies were rendered unavailable based upon two (2) separate grounds: "misrepresentation" and "opaque policy." (Doc. No. 76 at 8.) More specifically, Plaintiff asserts that: DOC staff misrepresented what documents he needed to submit in order to properly appeal to the DOC's final level of review; the DOC's administrative remedy process is "opaque" due to the DOC's discretionary use of documents referred to as Action Required notices, which—essentially—identify the additional documentation that an inmate is required to submit to the DOC's final level of review in order to perfect an appeal; and the DOC's administrative remedy process is also "opaque" because it does not require inmates to name particular wrongdoers, but only to "identify" such individuals involved in the complained-of-events. (Id. at 8–13.)

The Court held an evidentiary hearing and oral argument on all exhaustion issues on December 14, 2022. (Doc. No. 74.) At the hearing, Plaintiff appeared by video technology at

his place of incarceration.  Defendants' counsel presented the testimony of Michael Bell, a

grievance officer, and Lisa Hollibaugh, a grievance coordinator, and Plaintiff's counsel presented

the testimony of Plaintiff.  In addition, the following documents were submitted into the record:

the parties' Joint Stipulations; Plaintiff's inmate grievance history with the DOC; Plaintiff's

disputed grievances; and DC-ADM 804.[2]  (Doc. No. 73 at 1.)

 Following the hearing, the Court ordered the parties to submit proposed findings of fact

and conclusions of law within thirty (30) days of the date on which the official transcript was

filed on the docket.  (Doc. No. 74.)  The transcript was filed shortly thereafter on January 9,

2023, and the parties filed proposed findings of fact and conclusions of law on February 5, 2023,

and February 8, 2023.  (Doc. Nos. 76–77.)  Both of these documents have been filed as motions

on the Court's docket.

 Thus, the issue of whether Defendants have met their burden to establish the affirmative

defense of Plaintiff's failure to exhaust administrative remedies, as to the disputed claims set

forth above, is ripe for the Court's resolution.  For the reasons discussed below, the Court finds

that Defendants have met their burden as to some of Plaintiff's remaining claims, and will

therefore grant in part and deny in part the parties' competing motions.

## II. LEGAL STANDARD

 The PLRA's exhaustion requirement mandates that "[n]o action shall be brought with

respect to prison conditions under [S]ection 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a) (emphasis added).  In other

---

[2]  Specifically, Defendants submitted exhibits one (1) through seven (7) into the record.  (Doc. No. 73.)  Those exhibits are contained in docket entry seventy (70) and in docket entry seventy-three (73).  In this Memorandum, the Court cites to the exhibits at docket entry seventy (70).

words, exhaustion of available administrative remedies is a prerequisite for a prisoner asserting a claim under Section 1983 regarding his prison conditions.  See Ross v. Blake, 578 U.S. 632, 638 (2016) (reiterating that the PLRA's "language is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies" (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)); Jones v. Bock, 549 U.S. 199, 211 (2007) (stating that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court" (citation omitted) (alteration added)); Booth v. Churner, 532 U.S. 731, 733–34 (2001) (stating that the PLRA "now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions" (quoting 42 U.S.C. § 1997e(a))).

"The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'"  Downey v. Pennsylvania Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (quoting Woodford, 548 U.S. at 88).  And the applicable "procedural rules are supplied by the individual prisons."  See id. (citations omitted); Spruill v. Gillis, 372 F.3d 218, 222 (3d Cir. 2004) (stating that "the determination [of] whether a prisoner has 'properly' exhausted a claim . . . is made by evaluating the prisoner's compliance with the prison's administrative regulations governing inmate grievances . . ."); see also Jones, 549 U.S. at 218 (explaining that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim . . ."); Woodford, 548 U.S. at 90 (stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . .").

A prisoner's failure to follow these procedural rules will result in a procedural default of his claims.  See id. at 230–32 (concluding that the PLRA's exhaustion requirement includes a

procedural default component); <u>Drippe v. Tobelinski</u>, 604 F.3d 778, 781 (3d Cir. 2010)
(recognizing this holding in <u>Spruill</u>).  A procedural default may be excused, however, if the
prisoner can show that the administrative remedies were unavailable to him.  See <u>Rinaldi v.</u>
<u>United States</u>, 904 F.3d 257, 266 (3d Cir. 2018) (stating that "[t]he PLRA requires only 'proper
exhaustion,' meaning exhaustion of those administrative remedies that are 'available'" (quoting
<u>Woodford</u>, 548 U.S. at 93)).  "An administrative remedy is unavailable when it 'operates as a
simple dead end[,] . . . is so opaque that it becomes, practically speaking, incapable of use, or
when prison administrators thwart inmates from taking advantage of a grievance process through
machination, misrepresentation, or intimidation.'" <u>Downey</u>, 968 F.3d at 305 (quoting <u>Shifflett v.</u>
<u>Korszniak</u>, 934 F.3d 356, 365 (3d Cir. 2019)).

The failure to exhaust available administrative remedies is an affirmative defense.  See
<u>Jones</u>, 549 U.S. at 216.  Accordingly, "[t]he burden to plead and prove failure to exhaust as an
affirmative defense rests on the defendant."  See <u>Rinaldi</u>, 904 F.3d at 268 (citing <u>Ray v. Kertes</u>,
285 F.3d 287, 295 (3d Cir. 2002)).  However, "once the defendant has established that the inmate
failed to resort to administrative remedies, the onus falls on the inmate to show that such
remedies were unavailable to him."  See <u>id.</u> (citation omitted).

Finally, requiring a prisoner to exhaust available administrative remedies before filing
suit in federal court advances the policy justifications of the PLRA—to "return[ ] control of the
inmate grievance process to prison administrators, encourage[ ] the development of an
administrative record, and perhaps settlements, within the inmate grievance process, and reduc[e]
the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits."  See
<u>Downey</u>, 968 F.3d at 305 (citation and internal quotation marks omitted) (alterations added));
<u>Jones</u>, 549 U.S. at 204 (explaining that the exhaustion requirement "allows prison officials an

opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court").

## III.   DISCUSSION

As stated above, before the Court for resolution is the issue of whether Defendants met their burden to demonstrate Plaintiff's failure to exhaust available administrative remedies as required by the PLRA before asserting Eighth Amendment solicitation-of-suicide claims against Defendants pursuant to Section 1983. Based upon the evidence presented at the December 14, 2022 hearing, and upon consideration of the record as a whole, as well as the relevant authorities, the Court makes the following findings of fact and conclusions of law.

### A.   Findings of Fact

1.   Plaintiff was incarcerated at SCI Smithfield during the period of time relevant to his claims—i.e., May 2018 until August 2019. (Doc. Nos. 1, 71.)

2.   Defendants worked at SCI Smithfield during the period of time relevant to Plaintiff's claims. See (id.).

### Facts Concerning DC-ADM 804

3.   DC-ADM 804 is a DOC policy and procedures manual concerning inmate grievances. (Doc. No. 70-2 at 53–87.)

4.   Under DC-ADM 804, it is the express "policy of the [DOC] that every individual committed to its custody shall have access to a formal procedure through which to seek resolution of problems or other issues of concern arising during the course of confinement. For every such issue, there shall be a forum for review and two avenues of appeal." (Id. at 53.)

5.   This formal procedure is referred to by the DOC as the "Inmate Grievance System," and it is comprised of three (3) separate steps. (Id. at 53, 56–87.)

6.   The first step is that the inmate is required to submit a grievance to the Facility Grievance Coordinator or designee, usually the Superintendent's Assistant, within fifteen (15) working days after the event upon which the grievance is based. (Id. at 56–66.)

7.      The second step is that the inmate is required to appeal an initial review response/rejection to the Facility Manager or designee within fifteen (15) working days from the date of the initial review response/rejection.  (Id. at 67–70.)

8.      The third step is that the inmate is required to appeal the Facility Manager/designee's decision for final review at the Secretary's Office of Inmate Grievance and Appeals ("SOIGA") within fifteen (15) working days of the date of the Facility Manager/designee's decision.  (Id. at 70–75.)

9.      At the first step, the inmate is required to include, inter alia, a statement of the facts and to "identify" the individuals who were directly involved in the events.  (Id. at 57.)

10.     At the third step, when an inmate appeals a grievance to SOIGA for final review, the inmate must include the following documentation relevant to the appeal: a legible copy of the initial grievance; a copy of the initial review response/rejection and/or remanded initial review response/rejection; a legible copy of the inmate appeal to the facility manager; and a copy of the Facility Manager/designee's decision and/or remanded Facility Manager/designee's decision; and a written appeal to SOIGA.  (Id. at 72.)

11.     Also at the third step, SOIGA is not required to send out an Action Required notice when an inmate's appeal is incomplete for failure to include all of the required documentation; however, in its discretion, SOIGA can issue such a notice.  (Doc. No. 75 at 8:22–9:3.)  Additionally, DC-ADM 804 does not contain any specific language or provisions concerning the Action Required notice.[3]  (Doc. No. 70-2 at 53–87.)

12.     However, when SOIGA issues an Action Required notice, the inmate is required to submit the missing documentation within fifteen (15) working days from the date of the notice and failure to do so within the fifteen (15) working days "may result in dismissal of [his] appeal."  See, e.g., (Doc. No. 70-2 at 38).

13.     Plaintiff is familiar with the three (3) separate steps of DC-ADM 804.  (Doc. No. 75 at 51:6–52:8.)

14.     Plaintiff is also familiar with Action Required notices.  (Id. at 52:9–19.)

---

[3]  This discretion is reflected by the fact that Grievances 740549, 742409, 815279, and 820783 were each missing one of the required documents when Plaintiff appealed to SOIGA for final review.  However, only two of those Grievances prompted SOIGA to issue an Action Required notice.

10

15. Generally speaking, Plaintiff "would correct the errors" referenced in the Action Required notices "by submitting the paperwork."  (Id. at 52:14–19.)[4]

16. In addition, and generally speaking, Plaintiff would request copies of documents related to his various grievances from Ms. Hollibaugh or Defendant Luther, "but on numerous occasions" never received such copies.  (Id. at 53:10–54:1.)

**Official Inmate Grievance Number 740549-18**

17. Plaintiff submitted an Official Inmate Grievance, numbered 740549-18 ("Grievance 740549").  (Doc. No. 70-2 at 5–6.)

18. Grievance 740549 is dated May 31, 2018.  (Id. at 5.)

19. Lisa Hollibaugh, the assigned grievance coordinator, provided Plaintiff with a notification that an extension of time was needed in order to "appropriately investigate and respond to" Grievance 740549.  (Id. at 7.)

20. The notification is dated June 7, 2018.  (Id.)

21. The assigned grievance officer issued an Initial Review Response denying Grievance 740549.  (Id. at 8–9.)

22. The Initial Review response is dated June 29, 2018.   (Id. at 9.)

23. Defendant Luther issued a Facility Manager's Appeal Response denying Plaintiff's appeal.[5]  (Id. at 10.)

24. The Facility Manager's Appeal Response is dated August 15, 2018.  (Id.)

25. Plaintiff appealed the Facility Manager's Appeal Response to SOIGA.  (Id. at 11.)

26. Plaintiff's appeal to SOIGA is dated August 17, 2018.  (Id.)

27. In response to Plaintiff's appeal to final review, SOIGA issued a Final Appeal Decision Dismissal.  (Id. at 2.)

---

[4] Because Plaintiff was not only familiar with Action Required notices, but understood how to appropriately respond to them, his argument that SOIGA's issuance of these documents have resulted in an "opaque policy" is unpersuasive.

[5] A copy of Plaintiff's appeal to the Facility Manager is not contained in the record.

28.     The Final Appeal Decision Dismissal is dated October 3, 2018.  (Id.)

29.     The assigned chief grievance officer dismissed the appeal for the
        following reason: "You have not provided this Office [i.e., SOIGA] with
        required and/or legible documentation for proper review."  (Id.)

30.     Specifically, "[a] copy of [Plaintiff's] appeal to the superintendent [i.e.,
        facility manager] was not received with [his] appeal to [SOIGA].  Due to
        this, [his] appeal to [SOIGA] [was] dismissed."  (Id.)

### Official Inmate Grievance Number 742409-18

31.     Plaintiff submitted an Official Inmate Grievance, numbered 742409-18
        ("Grievance 742409").  (Id. at 14–15.)

32.     Grievance 742409 is dated June 16, 2018.  (Id. at 14.)

33.     The assigned grievance officer issued an Initial Review Response denying
        Grievance 742409.  (Id. at 16–17.)

34.     The Initial Review Response is dated July 13, 2018. (Id. at 17.)

35.     Defendant Wakefield issued a Facility Manager's Appeal Response
        denying Plaintiff's appeal.[6]  (Id. at 18.)

36.     The Facility Manager's Appeal Response is dated August 7, 2018.  (Id.)

37.     Plaintiff appealed the Facility Manager's Appeal Response to SOIGA.
        (Id. at 19.)

38.     Plaintiff's appeal to SOIGA is dated August 12, 2018.  (Id.)

39.     In response to Plaintiff's appeal to final review, SOIGA issued a Final
        Appeal Decision Dismissal.  (Id. at 13.)

40.     The Final Appeal Decision Dismissal is dated October 3, 2018.  (Id.)

41.     The assigned chief grievance officer dismissed Plaintiff's appeal for the
        following reason: "You have not provided this Office [i.e., SOIGA] with
        required and/or legible documentation for proper review."  (Id.)

---

[6] A copy of Plaintiff's appeal to the Facility Manager is not contained in the record.

42.   Specifically, "[a] copy of [Plaintiff's] appeal to the superintendent [i.e., facility manager] was not received with [his] appeal to [SOIGA].  Due to this, [his] appeal to [SOIGA] [was] dismissed."  (Id.)

**<u>Official Inmate Grievance Number 815279-19</u>**

43.   Plaintiff submitted an Official Inmate Grievance, numbered 815279-19 ("Grievance 815279").  (Id. at 25.)

44.   Grievance 815279 is dated July 28, 2019.  (Id.)

45.   Grievance 815279 names Defendants Shope and Fisher.   (Id.)

46.   Grievance 815279 does not name Defendants Luther, Rivello, Wakefield, Garman, Sunderland, or Swissher.  See (id.); see also (Doc. No. 75 at 15:12–16:4).

47.   Plaintiff states in Grievance 815279 that "several c/os saw wounds and continued to walk past [his] cell."  (Doc. No. 70-2 at 25.)

48.   Plaintiff does not identify these "c/os" (i.e., correctional officers) by name or further description.  (Id.)

49.   The assigned grievance officer issued an Initial Review Response denying Grievance 815279.  (Id. at 26.)

50.   The Initial Review response is dated August 6, 2019.  (Id.)

51.   Defendant Luther issued a Facility Manager's Appeal Response denying Plaintiff's appeal.[7]  (Id. at 27.)

52.   The Facility Manager's Appeal Response is dated September 16, 2019.  (Id.)

53.   Plaintiff appealed the Facility Manager's Appeal Response to SOIGA.  (Id. at 28.)

54.   Plaintiff's appeal is dated September 18, 2019.  (Id.)

55.   Plaintiff names Defendant Luther in his appeal.  (Id.)

56.   In response to Plaintiff's appeal to final review, SOIGA issued an Action Required notice.  (Id. at 24.)

---

[7]  A copy of Plaintiff's appeal to the Facility Manager is not contained in the record.

57.     The Action Required notice is dated October 15, 2019.  (Id.)

58.     Plaintiff submitted a letter to SOIGA explaining that he had "enclosed all documents needed to properly exhaust[.]"  (Id. at 22.)

59.     Plaintiff's letter is dated October 17, 2019.  (Id.)

60.     In response, SOIGA issued a Final Appeal Decision denying Plaintiff's appeal.  (Id. at 21.)

61.     The Final Appeal Decision is dated November 13, 2019.  (Id.)

**Official Inmate Grievance Number 819311-19**

62.     Plaintiff submitted an Official Inmate Grievance, numbered 819311-19 ("Grievance 819311").  (Id. at 31.)

63.     Grievance 819311 is dated August 21, 2019.  (Id.)

64.     The assigned grievance officer issued an Initial Review Response denying Grievance 819311.  (Id. at 30.)

65.     The Initial Review Response is dated September 4, 2019.  (Id.)

66.     Staff distributed the Initial Review Response to Plaintiff on September 4, 2019.  (Id.; Doc. No. 75 at 43:3–21.)

67.     Plaintiff did not appeal the Initial Review Response to the Facility Manager or to SOIGA for final review.  (Doc. No. 70-2 at 29–31.)

**Official Inmate Grievance Number 820783-19**

68.     Plaintiff submitted an Official Inmate Grievance, numbered 820783-19 ("Grievance 820783").  (Id. at 35.)

69.     Grievance 820783 is dated August 24, 2019.  (Id.)

70.     Plaintiff appealed the Initial Review Response to Grievance 820783.[8]  (Id. at 40.)

71.     Plaintiff's appeal is dated August 30, 2019.  (Id.)

---

[8]  A copy of the Initial Review Response is not contained in the record.

14

72.     Defendant Luther issued a Facility Manager's Appeal Response denying Plaintiff's appeal.  (Id. at 41.)

73.     The Facility Manager's Appeal Response is dated August 16, 2019.  (Id.)

74.     Plaintiff appealed the Facility Manager's Appeal Response to SOIGA. (Id. at 42.)

75.     Plaintiff's appeal to SOIGA is dated August 18, 2019.  (Id.)

76.     In response to Plaintiff's appeal to final review, SOIGA issued an Action Required notice.  (Id. at 38.)

77.     The Action Required notice is dated October 15, 2019.  (Id.)

78.     The Action Required notice acknowledges receipt of Plaintiff's appeal to final review, but states that his appeal is "incomplete" for failure to provide relevant documentation.  (Id.)

79.     The notice identifies the following documentation that Plaintiff was required to submit to SOIGA: the "[i]nitial review response and/or **_rejection_**."  (Id. (emphasis in original).)[9]

80.     The notice directs Plaintiff  to submit the aforementioned documentation within fifteen (15) working days from the date of the notice and informs Plaintiff that failure to provide the required documentation within the fifteen (15) working days "may result in dismissal of [his] appeal."  (Id.)

81.     In response to the Action Required notice, Plaintiff submitted a handwritten note, a copy of Grievance 820783, an appeal to the facility manager for a different grievance (i.e. 815279), and an Action Required notice for a different grievance (i.e., 816143).  (Id. at 33–36.)

82.     Plaintiff's handwritten note is dated October 17, 2019.  (Id. at 34.)

---

[9] Plaintiff incorrectly asserts that SOIGA directed him to submit "a copy of his **grievance**" instead of the initial review response and/or rejection.  (Doc. No. 76 at ¶ 7 (emphasis in original) (citing Defendants' Exhibit 5).)  Defendants' Exhibit 5 contains two (2) separate Action Required notices (Doc. No. 70-2 at 37, 38), and only one of those notices pertains to the pertinent grievance—i.e., Grievance 820783 (id. at 38). That notice directed Plaintiff to submit the "[i]nitial review response and/or **_rejection_**."  (Id. (emphasis in original).)  The other notice, which pertains to a different grievance (i.e., 816143), reflects that Plaintiff mistakenly submitted this document to SOIGA in connection with Grievance 820783.  (Id. at 37.)  Thus, Plaintiff's claim of "misrepresentation" with respect to Grievance 820783 is unpersuasive.

83.    In response, SOIGA issued a Final Appeal Decision Dismissal dismissing Plaintiff's appeal.  (Id. at 33.)

84.    Specifically, Plaintiff failed to "provide[ ] the required documentation[.]" (Id.)

85.    The Final Appeal Decision Dismissal is dated November 19, 2019.  (Id.)

In light of these findings of fact, the Court makes the following conclusions of law.

**B.**    **Conclusions of Law**

### The PLRA

1.    Pursuant to the PLRA, exhaustion of available administrative remedies is a prerequisite for Plaintiff to assert Eighth Amendment solicitation-of-suicide claims against Defendants under Section 1983.  See Ross, 578 U.S. at 638; Jones, 549 U.S. at 211; Booth, 532 U.S. at 733–34.

2.    Defendants bear the burden of demonstrating that Plaintiff failed to exhaust his available administrative remedies at SCI Smithfield.  See Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013); Rinaldi, 904 F.3d at 268.

3.    If Defendants establish that Plaintiff failed to resort to administrative remedies, the onus falls on Plaintiff to demonstrate that such remedies were unavailable to him.  See id.

### DC-ADM 804

4.    An inmate's failure to submit the required documents to SOIGA results in the inmate failing to exhaust administrative remedies. See, e.g., Mack v. Klopotoski, 540 F. App'x 108, 113 (3d Cir. 2013) (unpublished) (affirming dismissal for inmate's failure to properly exhaust because inmate had failed to include photocopies of his appeals to the Facility Manager and rejecting substantial compliance argument that inmate filed handwritten copies since DC-ADM 804 specifically required photocopies).

5.    An inmate's failure to comply with the Action Required notice results in the inmate failing to exhaust administrative remedies.  See, e.g., Spearman v. Morris, 643 F. App'x 82, 85 (3d Cir. 2016) (unpublished) (affirming district court's decision where the inmate failed to comply with the Action Required notices, as he "never perfected his appeal for final review according to applicable procedures . . . ").

**Grievances 740549 and 742409**

6.        DC-ADM 804 provides that an inmate who is appealing a grievance to final review is required to provide SOIGA with certain documentation, including, inter alia, "a legible copy of the Inmate Appeal to the Facility Manager[.]" (Doc. No. 70-2 at 72.)

7.        Defendants established that Plaintiff failed to include a copy of his appeal to the Facility Manager (i.e., the Superintendent) on final review to SOIGA with respect to Grievances 740549 and 742409. (Id. at 2, 13; Doc. No. 75 at 11:25–12:10, 13:2–15.)

8.        As a result, Defendants met their burden of proof that Plaintiff failed to properly exhaust administrative remedies with respect to Grievances 740549 and 742409.

9.        Plaintiff did not meet his burden of proof that administrative remedies were unavailable to him concerning Grievances 740549 and 742409. Plaintiff did not provide specific testimony or evidence concerning the documents that he provided to SOIGA for final review. Plaintiff also did not provide specific testimony or evidence that he was denied a copy of his appeals to the Facility Manager or that prison staff otherwise prevented him from submitting copies of his appeals to SOIGA.

**Grievance 815279**

10.       DC-ADM 804 provides that an inmate's grievance "shall identify individuals directly involved in the event(s)." (Doc. No. 70-2 at 57.)

11.       Defendants established that Plaintiff failed to identify Defendants Rivello, Wakefield, Garman, Sunderland, and Swissher in Grievance 815279. (Id. at 25; Doc. No. 75 at 15:12–16:4.)

12.       As a result, Defendants met their burden of proof that Plaintiff failed to properly exhaust administrative remedies with respect to Defendants Rivello, Wakefield, Garman, Sunderland, and Swissher as it pertains to Grievance 815279.[10]

---

[10] In Jones, the United States Supreme Court concluded that the state prisoners' Section 1983 actions were not automatically rendered non-compliant with the PLRA when those prisoners had failed to identify all of the named defendants in previous administrative grievances. See Jones, 549 U.S. at 217. In support, the Supreme Court explained that the PLRA does not contain a "name all defendants" requirement in order to properly exhaust. See id. The Supreme Court also explained, however, that proper exhaustion requires completion of the administrative review process in accordance with the relevant procedural rules, which are not defined by the PLRA, but by the prison's internal grievance process. See id. at 218. As such, the Supreme Court stated

13.     Plaintiff did not meet his burden of proof that administrative remedies were unavailable to him concerning Grievance 815279.  Plaintiff did not provide specific testimony or evidence that he was unable, or prevented from, identifying these Defendants in this Grievance.

14.     Defendants did not establish, however, that Plaintiff failed to identify Defendant Luther with respect to Grievance 815279.[11]  (Id. at 28.)

15.     As a result, Defendants did not meet their burden of proof that Plaintiff failed to properly exhaust administrative remedies with respect to Defendant Luther and Grievance 815279.

### Grievance 820783

16.     DC-ADM 804 provides that an inmate who appeals a grievance to final review is required to provide SOIGA with certain documentation, including, inter alia, "a copy of the initial review response/rejection and/or remanded initial review response/rejection[.]" (Doc. No. 70-2 at 72.)

17.     Defendants established that Plaintiff failed to include a copy of the initial review response to Grievance 820783 on final review to SOIGA.  (Id. at 38; Doc. No. 75 at 17:1–19.)

---

that the level of detail that will be necessary for an inmate to comply with the administrative review process "will vary from system to system and claim to claim[.]"  See id.  In this case, DC-ADM 804 expressly requires that, in the initial grievance, the inmates "shall identify individuals directly involved in the event(s)."  (Doc. No. 70-2 at 57.)  The Court notes that this is distinguishable, and materially so, from the facts in Jones, where the pertinent prison policy did not impose a requirement on inmates to identify the wrongdoers.  See Jones, 549 U.S. at 218 (stating that the Michigan Department of Corrections' policy did not require the prisoners "to identify a particular responsible party" and, thus, the policy did not support a "conclusion that the grievance process was improperly invoked simply because an individual later named as a defendant was not named at the first step of the grievance process").  As such, Plaintiff's reliance on Jones to argue that the DOC has an "opaque" administrative remedy process is unpersuasive.

[11]  While Plaintiff did not name Luther in his initial grievance, he named Luther in his appeal. (Doc. No. 70-2 at 25, 28.)  Additionally, Plaintiff stated in his initial grievance that "several c/os saw wounds" as a result of him self-harming, but "continued to walk past [his] cell."  (Id. at 25.) Although it is unclear to the Court whether Plaintiff was referencing Defendant Luther as one of these correctional officers, Defendants have not squarely addressed this issue that exists in the record.  Thus, they have not met their burden of proof with respect to Defendant Luther as it pertains to Grievance 815279.

18.   As a result, Defendants met their burden of proof that Plaintiff failed to properly exhaust administrative remedies with respect to Grievance 820783.

19.   Plaintiff did not meet his burden of proof that administrative remedies were unavailable to him concerning Grievance 820783.  Plaintiff did not provide specific testimony or evidence concerning the documents that he provided to SOIGA for final review.  Plaintiff also did not provide specific testimony or evidence that he was denied a copy of his initial review response or that prison staff otherwise prevented him from submitting a copy of that response to SOIGA.

## **Grievance 819311**

20.   DC-ADM 804 provides a three (3)-step process for inmates to follow concerning the DOC's administrative review process: (1) a grievance at the initial level; (2) an appeal to the facility manager (i.e., the superintendent); and an appeal to SOIGA for final review.  (Doc. No. 70-2 at 53, 56–87.)

21.   Defendants established that Plaintiff failed to appeal the initial review response to Grievance 819311 to both the facility manager and then to SOIGA for final review.  (Id. at 29–31; Doc. No. 75 6:24–8:21.)

22.   As a result, Defendants met their burden of proof that Plaintiff failed to properly exhaust administrative remedies with respect to Grievance 819311.

23.   Plaintiff did not meet his burden of proof that administrative remedies were unavailable to him concerning Grievance 819311.  Plaintiff did not provide specific testimony or evidence that he did not receive the initial review response to Grievance 819311 or that prison staff prevented him from properly appealing.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that Defendants have met their burden to demonstrate that Plaintiff failed to exhaust available administrative remedies as it relates to some of his remaining claims in this action.  As a result, the Court will dismiss these claims based upon Plaintiff's failure to exhaust, as required by the PLRA.  Accordingly, this action shall

proceed on Plaintiff's remaining Eighth Amendment solicitation-of-suicide claims, as identified

in the accompanying Order.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania