IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN COIT,                                          :
                                    Plaintiff    :    No. 1:19-CV-2036
            v.                                       :
                                                     :    Judge Kane
J.P. LUTHER, C. WAKEFIELD,                :
SUNDERLAND, C. SHOPE,                     :    Electronically Filed Document
D. WILLIAMS, B. FISHER, *and*              :
McKIM,                                               :    *Complaint Filed 11/27/19*
                                                     :
                                    Defendants :

DEFENDANTS' TRIAL BRIEF

            Defendants Luther, Wakefield, Sunderland, Shope, Williams, Fisher, and

McKim, through counsel, hereby file this Trial Brief in accordance with this

Court's Trial Scheduling Order, (Doc. 110 at ¶ I(c)), and Local Rule 39.7.

                                    Respectfully submitted,

                                    MICHELLE A. HENRY
                                    Attorney General

                        By:    s/ Mary Katherine Yarish
                                    MARY KATHERINE YARISH
Office of Attorney General          Deputy Attorney General
15th Floor, Strawberry Square       Attorney ID PA 328843
Harrisburg, PA 17120
Phone: (717) 783-6315               NICOLE R. DITOMO
                                    Chief Deputy Attorney General
myarish@attorneygeneral.gov         Civil Litigation Section

Date:  December 2, 2024             *Counsel for Defendants*

## TABLE OF CONTENTS

PROCEDURAL HISTORY & STATEMENT OF ANTICIPATED TRIAL
TESTIMONY & EVIDENCE ..................................................................................1

STATEMENT OF QUESTIONS INVOLVED......................................................4

ARGUMENTS .........................................................................................................4

    I.      Defendants McKim, Luther, and Fisher are not personally involved
with respect to the May 4th and July 28th claims because they
were not working inside of SCI Smithfield on these days..............4

    II.    Defendants were not deliberately indifferent to Plaintiff's health
and safety needs and Plaintiff cannot establish, via competent
admissible evidence, the causal element for his claim. ...................6

            May 4, 2019 ........................................................................8

            July 28, 2019........................................................................8

            August 5, 2019 ....................................................................9

    III.   Plaintiff is not entitled to compensatory damages because he will
not be able to prove via competent, admissible evidence that he
allegedly suffered any greater than *de minimis* physical injury.....10

    IV.   Plaintiff did not plead punitive damages as a requested form of
relief within his Complaint. ..........................................................11

    V.    Plaintiff is not entitled to injunctive relief because his prison
transfer moots all such relief and all alleged events allegedly
occurred on three discrete days in 2019........................................17

    VI.   To the extent that Plaintiff attempts to amend the dates and times
of his claims against Defendants at time at trial, Defendants will
re-assert the defense of failure to exhaust administrative remedies
and will seek a curative instruction as to what specific dates and
times are at issue for the jury to consider. ....................................19

    CONCLUSION .........................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addie v. Kjaer*,

   737 F.3d 854 (3d Cir. 2013)............................................................................. 14

*Atain Specialty Ins. Co. v. Northeast Mtn. Guiding LLC*,

   2021 WL 2660302 (D.N.J. June 29, 2021) ........................................................ 15

*Campbell Soup Co. v. ConAgra, Inc.*,

   977 F.2d 86 (3d Cir. 1992)............................................................................... 18

*Evans Prod. Co. v. W. Am. Ins. Co.*,

   736 F.2d 920 (3d Cir. 1984)............................................................................. 15

*Evans v. McDonald's Corp.*,

   936 F.2d 1087 (10th Cir. 1991)........................................................................ 15

*Garlick v. Anadarko Petroleum Corp.*,

   2017 WL 3485738,n.4 (M.D. Pa. Aug. 15, 2017) ............................................. 15

*Kost v. Kozakiewicz*,

   1 F.3d 176 (3d Cir. 1993)................................................................................. 5

*Lee v. Certainteed Corp.*,

   123 F. Supp.3d 780 (E.D.N.C. 2015)................................................................ 15

*Marshall v. Pa. Dep't of Corr.*,

   499 F. App'x 131 (3d Cir. 2012) ...................................................................... 18

*McLeod v. Stevens*,

   617 F.2d 1038 (4th Cir. 1980).......................................................................... 15

*Miller v. Hartwell*,

   834 F. App'x 692 (3d Cir. 2020) ...................................................................... 18

*Mitchell v. Horn*,

   318 F.3d 523 (3d Cir. 2003)............................................................................. 10

*Pinkley, Inc. v. City of Frederick, Md.*,
   191 F.3d 394 (4th Cir. 1999) ................................................................. 15

*Rhines v. United States*,
   2016 WL 5404566 (M.D. Pa. Sept. 28, 2016) ................................. 14, 17

*Rode v. Dellarciprete*,
   845 F.2d 1195 (3d Cir. 1988) .................................................................. 5

*SI Handling Sys., Inc. v. Heisley*,
   753 F.2d 1244 (3d Cir. 1985) ................................................................. 18

*Spruill v. Gillis*,
   372 F.3d 218 (3d Cir. 2004) ................................................................... 19

*Williams v. Beard*,
   482 F.3d 637 (3d Cir. 2007) ................................................................... 19

*Wilson v. Muckala*,
   303 F.3d 1207 (10th Cir. 2002) ....................................................... 15, 16

*Woodford v. Ngo*,
   548 U.S. 81 (2006) ................................................................................. 19

## Statutes

42 U.S.C. § 1997e(a) ............................................................................... 19

42 U.S.C. § 1997e(e) ............................................................................... 10

## Rules

Fed. R. Civ. P. 8(a)(3) ............................................................................. 11

Fed. R. Civ. P. 15(b)(2) ..................................................................... Passim

## PROCEDURAL HISTORY & STATEMENT OF ANTICIPATED TRIAL TESTIMONY & EVIDENCE

Plaintiff filed his Complaint on November 27, 2019.  (Doc. 1.)   Following the close of discovery, (Doc. 32), resolution of Defendants' Motion for Summary Judgment (Docs. 52-53), and failure to exhaust administrative remedies, (Docs. 83-84), this matter is presently proceeding solely on one remaining Eighth Amendment failure to protect from suicide claim against each of the individual Defendants.  (*See id.*)  In so doing, and more specifically, Plaintiff claims that:

- On Saturday, May 4, 2019, at approximately 1:00 p.m., he told Mr. Williams that he was suicidal, that Mr. Williams did nothing in response to his report, that at approximately at 1:30 p.m. he showed Mr. Williams that he scratched his wrist with a staple and nothing was done, and that Mr. McKim told him that he would have to cut deeper before they would care;

- On Sunday, July 28, 2019, at approximately 5:30 p.m., he told Mr. Shope that he was hearing voices telling him to kill himself, and Mr. Shope encouraged him to harm himself and was left in his cell for hours to cut his wrists to write blood on the windows and walls, and that Ms. Luther and Mr. Fisher told other officers to ignore him during his bouts of depression and suicide attempts; and

- On Monday, August 5, 2019, at approximately 10:30 a.m., he told Mr. Wakefield, Mr. Sunderland, Ms. Luther, and Mr. Fisher, that he was suicidal and Mr. Wakefield, Mr. Sunderland, Ms. Luther, and Mr. Fisher allegedly said that "they did not care because the did not have to deal with him", later that day at approximately 2:00 p.m., Mr. Coit claims that he showed Mr. Fisher that he had cut his wrist and that his walls were covered in his blood but nothing was done in response.

The aforementioned averments are specific and each Defendant is not alleged to have been a part of each day's alleged events.

1

Defendant McKim maintains, will testify, and will prove via documentary evidence that he was not working inside the prison on May 4, 2019. Defendants Luther and Fisher maintain, will testify, and will prove via documentary evidence that they were not working inside the prison on July 28, 2019.

Testimony and documentary evidence will show that Plaintiff was under the care of medical and mental health professionals and was stable during all times in question. Testimony from Defendants and third parties will establish that the Behavioral Management Unit (BMU) is not a mental health block and that correctional staff rely upon the sound judgment of medical and mental health professionals when it comes to providing mental and medical health care to inmates.

Defendants and third parties will provide testimony regarding their training on correctional staff responsibilities relating to security and recognizing the signs and symptoms of suicidal or homicidal ideations or behaviors. Defendants Williams and McKim will testify that they were not deliberately indifferent to Plaintiff's safety. Defendant Williams will testify, with documentary evidence, that he completed his daily tasks and responsibilities as a correctional officer on May 4, 2019, and that he was not deliberately indifferent to Plaintiff. Third-party testimony and documentary evidence will show that Plaintiff's July 28, 2019 events did not occur in any fashion in which Plaintiff describes.  Defendant Shope

2

will testify, with documentary evidence, that he completed his daily tasks and responsibilities as a correctional officer on July 28, 2019, and that he was not deliberately indifferent to Plaintiff.  Defendants Luther, Wakefield, Sunderland, and Fisher will testify that they were not deliberately indifferent to Plaintiff on August 5, 2019.  Third party witness testimony and documentary evidence will establish that Plaintiff's version of events on August 5, 2019 did not occur as he describes.

Plaintiff's own statements and anticipated trial testimony, as well as the testimony of Defendants and third parties and documentary evidence, will establish that he was of stable mind on the days in question, was not vulnerable to suicide, was under the care of mental health and medical professionals, and that Defendants were not deliberately indifferent to his needs. Additionally, trial testimony and evidence will establish that Plaintiff cannot prove via a preponderance of the evidence that any alleged injury was purportedly caused by the alleged action or alleged inaction of any and all Defendants.

*　　*　　*　　*　　*　　*

<u>STATEMENT OF QUESTIONS INVOLVED</u>

I.      Whether Defendants McKim, Luther, and Fisher were not personally
        involved with respect to the May 4th and July 28th claims because they were
        not working inside of SCI Smithfield on these days?

II.     Whether Defendants are entitled to judgment on the Eighth Amendment
        failure to protect from suicide claim because they were not deliberately
        indifferent to Plaintiff's health and safety needs and as Plaintiff cannot
        establish, via competent admissible evidence, the causal element for his
        claim?

III.    Whether Plaintiff is not entitled to compensatory damages because he will
        not be able to prove via competent, admissible evidence that he allegedly
        suffered any greater than *de minimis* physical injury?

IV.     Whether Plaintiff is not entitled to punitive damages because he did not
        plead those damages as a requested form of relief within his Complaint?

V.      Whether Plaintiff is not entitled to injunctive relief because his prison
        transfer moots all such relief?

VI.     Whether and to the extent that Plaintiff attempts to amend the dates and
        times of his claims against Defendants at time at trial Defendants will re-
        assert the defense of failure to exhaust administrative remedies and will seek
        a curative instruction as to what specific dates and times are at issue for the
        jury to consider?

   *Suggested Answer to All:*  Yes.

<u>ARGUMENTS</u>

**I.      Defendants McKim, Luther, and Fisher are not personally involved
        with respect to the May 4th and July 28th claims because they were not
        working inside of SCI Smithfield on these days.**

        In order to bring a Section 1983 claim, the plaintiff must establish that

(1) the conduct complained of deprived him of rights, privileges, and immunities

secured by the Constitution or laws of the United States; and (2) the conduct was

committed by a person acting under color of state law.  *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993).  A defendant "must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  One's "personal involvement" may be established by alleging that he had actual knowledge and acquiesced or personally directed the events in question that resulted in the plaintiff's deprivation of rights.  *Id.*

In this matter, Plaintiff cannot establish that McKim, Luther, or Fisher were personally involved in the claims that he asserts against them with respect to May 4, 2019, or July 28, 2019, respectively because their testimony combined with objective, documentary evidence relating to the prison's security biometrics system that tracks all employee entrances and exits from the prison via their thumbprint and identification card swipe, (Defs. Ex. 38 at 9, and Ex. 39 at 4, 9), will establish that they were not working inside the institution on either of these two days.  No reasonable jury could find otherwise. As such, Defendants McKim, Luther, and Fisher are entitled to the claims asserted against them with respect to May 4, 2019 (McKim), and July 28, 2019 (Luther and Fisher).

**II.    Defendants were not deliberately indifferent to Plaintiff's health and safety needs and Plaintiff cannot establish, via competent admissible evidence, the causal element for his claim.**

The Third Circuit Court of Appeals' jury instruction on the Eighth

Amendment failure to protect from suicide claim includes the following:

> Because inmates must rely on prison authorities to treat their serious medical needs, the government has an obligation to provide necessary medical care to them. If an inmate is particularly vulnerable to suicide, that is a serious medical need. In this case, Mr. Coit claims that he was particularly vulnerable to suicide and that Mr. Williams, Mr. McKim, Mr. Shope, Mr. Fisher, Ms. Luther, Mr. Wakefield, and Mr. Sunderland violated the Eighth Amendment to the United States Constitution by showing deliberate indifference to that vulnerability.
>
> In order to establish his claim for violation of the Eighth Amendment, Mr. Coit must prove the following three things by a preponderance of the evidence:
>
> > *First:* Mr. Coit was particularly vulnerable to suicide. Mr. Coit must show that there was a strong likelihood that he would attempt suicide.
> >
> > *Second:* Mr. Williams, Mr. McKim, Mr. Shope, Mr. Fisher, Ms. Luther, Mr. Wakefield, and Mr. Sunderland were deliberately indifferent to that vulnerability.
> >
> > *Third:* Mr. Coit would have suffered less harm if Mr. Williams, Mr. McKim, Mr. Shope, Mr. Fisher, Ms. Luther, Mr. Wakefield, and Mr. Sunderland had not been deliberately indifferent.

(4.11.2, Failure to Protect from Suicidal Action, Third Circuit Model Instructions.)

To establish deliberate indifference, however, Plaintiff equally has the

burden of proof to establish that each of the Defendants "knew that there was a

6

strong likelihood" that Plaintiff "would attempt suicide," and that Defendants "each disregarded that risk by failing to take reasonable measures to address it." (*Id.*) Plaintiff must prove that each Defendant "actually knew of the risk." (*Id.*)

"If a prison official knew of facts that they strongly suspected to be true, and those facts indicated a substantial risk of serious harm to an inmate, the official cannot escape liability merely because they refused to take the opportunity to confirm those facts." (*Id.*) "[M]ere carelessness or negligence is not enough to make an official liable." (*Id.*) "It is not enough for Plaintiff to show that a reasonable person would have known, or that Defendants should have known, of the risk to Plaintiff." Plaintiff must show that Defendants "actually knew of the risk." (*Id.*)

Here, Plaintiff will be unable to establish any of the requisite elements for this cause of action by a preponderance of the evidence. Defendants discuss each element in tandem with respect to each of the three days at issue.

Overall, with respect to all times at issue, third party witnesses will provide testimony and documentary evidence that Plaintiff was under the care of medical and mental health professionals and was observed by them to be mentally stable during the times at issue. Plaintiff also lacks the requisite expert testimony to establish any alleged causal connection between any alleged action or alleged inaction and the injuries he claims he purportedly sustained.

**May 4, 2019**

McKim will testify and there will be documentary evidence provided that McKim was not working inside of SCI Smithfield on this day and, thus, is neither personally involved nor is he, nor could be, liable in this matter.  He will also testify that he never stated to Plaintiff what Plaintiff claims and that he never ignored an inmate's medical condition that required medical attention.

Williams will testify, and documentary evidence will be provided, that Shope executed his duties as an officer on this day and was not deliberately indifferent to any need of Plaintiff.

Trial evidence will establish that Plaintiff was under the care of medical and mental health professionals at all times on this day. Evidence will show that Plaintiff did not suffer any greater than *de minimis* injury on this day.

In toto, McKim and Williams deny Plaintiff's claims against them.  Thus, McKim and Williams will ask this Court to enter judgment on their behalf with respect to the May 4, 2019 claim.

**July 28, 2019**

Luther and Fisher will testify and there will be documentary evidence provided that Luther and Fisher were not working inside of SCI Smithfield on this day and, thus, are neither personally involved nor are they, nor could be, liable in this matter with respect to the claim related to this day. They will also testify that

8

they never instructed correctional staff to ignore Plaintiff's mental health or medical condition.

Shope will testify, and documentary evidence will be provided, that Shope executed his duties as an officer on this day and was not deliberately indifferent to any need of Plaintiff.

Third party witness Lusk will testify and provide documentary evidence that he personally saw Plaintiff on July 28, 2019 during the time period in question and at that time Plaintiff was not cutting himself as he claims in his Complaint.

Trial evidence will establish that Plaintiff was under the care of medical and mental health professionals at all times on this day. Evidence will show that Plaintiff did not suffer any greater than *de minimis* injury on this day.

Luther, Fisher, and Shope deny Plaintiff's claims against them. Thus, Luther, Fisher, and Shope will ask this Court to enter judgment on their behalf with respect to the July 28, 2019 claim.

## August 5, 2019

Trial evidence will establish that Plaintiff was under the care of medical and mental health professionals at all times on this day. Evidence will show that Plaintiff did not suffer any greater than *de minimis* injury on this day.

Luther, Fisher, Wakefield, and Sunderland deny Plaintiff's claims against them Thus, Luther, Fisher, Wakefield, and Sunderland will ask this Court to enter

judgment on their behalf with respect to the August 5, 2019 claim.

Based on the foregoing and based upon Defendants' case to-be-presented at trial, Defendants maintain that they are entitled to both qualified immunity and judgment on the claims asserted against each of them.

**III.    Plaintiff is not entitled to compensatory damages because he will not be able to prove via competent, admissible evidence that he allegedly suffered any greater than *de minimis* physical injury.**

"No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).  In order to establish this physical injury requirement within the PLRA, an inmate plaintiff must "demonstrate a less than significant, but more than *de minimis* physical injury." *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).  The PLRA does not apply to claims seeking injunctive relief. *Mitchell*, 318 F.3d at 536.

In this matter, Plaintiff sought compensatory damages.  (Doc. 1 at 20.) Defendants maintain that evidence and testimony at trial will demonstrate that Plaintiff did not suffer any, let alone greater than *de minimis*, physical injury. Plaintiff has only averred that he purportedly suffered pain and suffering from a physical injury.  There are no allegations that any economic damages are sought in this matter. Because Plaintiff cannot illustrate that he suffered any physical injury from the alleged events at issue in this litigation, he cannot meet the *de minimis*

physical injury requirement required for an inmate plaintiff to demonstrate to obtain compensatory damages under the PLRA. Thus, the PLRA limitation for the recovery of compensatory damages must be applied and Plaintiff's damages be limited to **nominal** damages and Defendants that are entitled to judgment as a matter of law on all requests for compensatory damages.

Additionally, Plaintiff lacks competent, admissible evidence that any alleged physical injuries purportedly sustained, were _caused_ by Defendants' alleged actions or inactions. Plaintiff cannot dispute that he saw mental health and medical staff and was under their professional care at all relevant times. Plaintiff is not calling an expert witness in this matter. Therefore, both the span of time as well as Plaintiff receiving medical and mental health care between the time of Defendants' alleged actions or inactions and his alleged injuries interrupts the causal chain. Without expert testimony to speak to the causal chain, Plaintiff can only rely upon his own self-serving testimony—which is not competent, admissible evidence to this expert required element. As such, for this additional reason, Plaintiff cannot recover compensatory damages from Defendants for the three days at issue in this matter.

## IV.   Plaintiff did not plead punitive damages as a requested form of relief within his Complaint.

Pursuant to Rule 8(a)(3), a plaintiff is required to plead the relief for which he seeks—including any alternative relief sought. Fed. R. Civ. P. 8(a)(3). In his

Complaint Plaintiff sought "injunctive relief", "appointment of counsel", and "250,000.00 dollars[.]" (Doc. 1 at ECF pg. 20.) He did not state a claim for any other specific forms of relief therein. (*See gen. id.*) Had he wanted to state a request for relief for punitive damages, as a prolific litigator himself, he should and could have done so. He did not. As such Plaintiff is prohibited from seeking a wholly new category of damages now on the eve of trial.

Plaintiff seemingly attempts to amend his operative pleading at the time of trial to add in a request for relief of punitive damages. (Plaintiff's Counsel's Nov. 26, 2024 Electronic Correspondence to the Court.) He claims that his failure to plead punitive damages should be excused due to his *pro se* status and, alternatively, that this Court should provide him leave to amend his Complaint pursuant to Rule 15(b)(2) of the Federal Rules of Civil Procedure. (*Id.*) Defendants disagree.

First, as this Court is well-aware, Plaintiff is a well experienced *pro se* litigator in this Court and is accustomed to the requirements of civil litigation.

Second, Counsel has been of record since August 15, 2022—over 840 days ago, or stated another way, two years, three months, and seventeen days. (Doc. 60.) Plaintiff responded "N/A" within his Pre-Trial Memorandum with respect to comments about pleadings. (Doc. 131 at 4 ¶ G.) Rather than provide a fulsome analysis as to whether Plaintiff has good cause to amend their complaint, which he

does not, Plaintiff merely concludes that this court should allow amendment because punitive damages would be available for claims such as this and does not demonstrate the "good cause" required at this late stage to amend the Complaint. (Plaintiff's Counsel's Nov. 26, 2024 Electronic Correspondence to the Court.)

To the extent that Plaintiff argues that Defendants have waived any opposition to Plaintiff's entitlement of punitive damages because Defendants adhered to this Court's order to provide draft jury instructions and verdict form prior to trial, he is mistaken for three reasons.

First, Defendant did not raise this issue for the first time without warning at the Pre-Trial Conference with the Court. At the first opportunity following summary judgment, the Defendants' Pre-Trial Memorandum would be and was the next procedural vehicle to present their defenses to Plaintiff's claims and requests for relief. Defendants did so and, in so doing, argued that Plaintiff failed to plead such relief and was not entitled to such relief. (Doc. 133 at 4-6.)

Second, taking this argument to its logical conclusion, that would mean that by advocating to ensure that the jury is properly instructed on the law and that a verdict form is accurate on issues that may arise during trial that every civil defendant waives their right to argue to the jury, or before the Court in Rule 50 Motions, that Plaintiff is not entitled and/or has not met their burden to establish

their purported ability to ask for damages to be awarded.  Such an absurd

conclusion is unworkable.

Third, Plaintiff failed to establish that he has sufficiently met the

requirements under Rule 15(b)(2) in order for an amendment to be possible.

Rule 15(b)(2) states:

> (2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2).

"[A]n issue has not been tried by implied consent if evidence relevant to the

new claim is also relevant to the claim originally pled, because the defendant does

not have any notice that the implied claim was being tried." *Addie v. Kjaer*, 737

F.3d 854, 867 (3d Cir. 2013) (citation omitted).  Where the proposed amendment

under Rule 15(b)(2) does not fall within either express or implied consent, the

motion or request to amend must be denied. *Rhines v. United States*, 2016 WL

5404566, at *2 (M.D. Pa. Sept. 28, 2016) (Caputo, J.) (citations omitted) (denying

Rule 15(b)(2) motion where the proposed amendment did not fall into either

express or implied consent).

The "primary consideration" in determining whether leave to amend should be granted under that rule is whether the opposing party would be prejudiced by amendment. *Evans Prod. Co. v. W. Am. Ins. Co.*, 736 F.2d 920, 924 (3d Cir. 1984). Where the party maintains their objection to the amendment in their briefing before the district court, that party does not impliedly consent to the amendment for Rule 15(b)(2) purposes. *See gen. Atain Specialty Ins. Co. v. Northeast Mtn. Guiding LLC*, 2021 WL 2660302, at *4-5 (D.N.J. June 29, 2021) (citations omitted); *see also Garlick v. Anadarko Petroleum Corp.*, 2017 WL 3485738, at *9 n.4 (M.D. Pa. Aug. 15, 2017) (Brann, J.) (citing *Lee v. Certainteed Corp.*, 123 F. Supp.3d 780, 794 (E.D.N.C. 2015) ("Accordingly, a case may not proceed to trial on 'an unpleaded theory of recovery' without 'express or implied consent of the parties.' *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 401 (4th Cir. 1999); *McLeod v. Stevens*, 617 F.2d 1038, 1040 (4th Cir. 1980). Further, 'a court will not imply consent to try a claim merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim.' "); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir. 1991) (introduction of new claim at trial improper where "a late shift in the thrust of the case" would "prejudice the other party in maintaining his defense upon the merits"); *Wilson v. Muckala*, 303 F.3d 1207, 1215–16 (10th Cir. 2002) ("[W]e do not normally expect to see claims or defenses not contained in the pleadings appearing for the first time in the pretrial

order, especially in such cursory form. Such a practice deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice.")).

Here, Plaintiff failed to meet the Rule 15(b)(2) amendment requirements. For one, the request to amend prior to trial is outside of the scope of Rule 15(b)(2) which is specifically only relevant either **_during_** or **_after_** trial.  (*Id.*) Neither of which are the case as trial has not yet begun. (Doc. 110 at 1.) As such, this Court should deny the request to amend on this basis alone.

Moreover, Defendants have not expressly consented to Plaintiff amending his Complaint to add in a punitive damage request for relief and have maintained and argued that Plaintiff failed to present this request for relief within his Complaint and that he is not entitled to any such damages within their Pre-Trial Memorandum and arguments made during the Pre-Trial Conference. (Doc. 133 at 4-6.) As such, Defendants have not expressly consented to this amendment.

Nor have Defendants impliedly consented to Plaintiff's proposed amendment.  Defendants raised their argument pertaining to this issue within their Pre-Trial Memorandum and during the Pre-Trial Conference. Defendants continue to raise this defensive argument herein and will continue to do so during and after trial.

This late amendment prejudices Defendants. Defendants litigated this entire case for several years on the premise that only injunctive relief and compensatory damages were sought. No discovery was taken with regard to a request for punitive damages. Moreover, the late addition of an entirely new category of damages also impacts how this case is evaluated by Defendants, thus, again placing them at a disadvantage. Thus, as Plaintiff's request to amend does not fall into either express or implied consent within Rule 15(b)(2), this Court must deny the request to amend. *Rhines*, 2016 WL 5404566, at *2.

## V. Plaintiff is not entitled to injunctive relief because his prison transfer moots all such relief and all alleged events allegedly occurred on three discrete days in 2019.

Within his Complaint relating to three discrete days in 2019—May 4, 2019, July 28, 2019, and August 5, 2019, while he was incarcerated at SCI Smithfield, Plaintiff sought "injunctive relief." (Doc. 1 at ECF pg. 20.) There is no operative claim that was alleged to be an ongoing harm. (*See gen. id.* ¶¶ 11-12 (May 4, 2019), 14 (July 28, 2019), 15 (August 5, 2019).) Since that time, however, Plaintiff has been moved to other state correctional institutions and is presently at SCI Somerset. (*See* Pa. Dep't of Corr. Inmate Locator, search "Kevin Coit" and inmate number "QQ-6730"), https://inmatelocator.cor.pa.gov/#/ , (last accessed Dec. 1, 2024).)

As Plaintiff did not allege that he was stating a claim of ongoing harm in the indefinite future and as Plaintiff was transferred to a separate correctional facility, as a matter of law, Plaintiff is not entitled to injunctive relief. *See Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86, 91 (3d Cir. 1992) ("[A] showing of irreparable harm is insufficient if the harm will occur only in the indefinite future. Rather, the moving party must make a clear showing of immediate irreparable harm."); *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1264 (3d Cir. 1985) (The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunction is to be issued.); *Miller v. Hartwell*, 834 F. App'x 692, 694 (3d Cir. 2020) (An inmate's request for injunctive relief against prison defendants at one correctional facility becomes moot when that inmate is transferred to another correctional facility.); *Marshall v. Pa. Dep't of Corr.*, 499 F. App'x 131, 134 (3d Cir. 2012).

Defendants, therefore, request that this Court strike all requests for injunctive relief from the Complaint and ask that no requests for injunctive relief be made to the jury by either the Parties or this Court.

18

**VI.    To the extent that Plaintiff attempts to amend the dates and times of his claims against Defendants at time at trial, Defendants will re-assert the defense of failure to exhaust administrative remedies and will seek a curative instruction as to what specific dates and times are at issue for the jury to consider.**

Under the Prisoner Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and must be "proper," which requires a prisoner to "us[e] all steps that the agency holds out, and [to do] so properly (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (proper exhaustion requires a prisoner to "comply with all . . . administrative requirements").  Claims that have not been properly exhausted are procedurally defaulted. *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004).

In this matter, following an evidentiary hearing, this Court previously addressed and resolved Defendants' affirmative defense of failure to exhaust administrative remedies. (Docs. 83-84.)  In so doing, the claims before this Court are extremely narrow in scope, and in time with only three days being at issue—May 4, 2019, July 28, 2019, and August 5, 2019. (Doc. 84.) Within those three days, the exhausted claims are limited to the times set forth within Plaintiff's inmate grievances—numbers 800605 (May 4, 2019 at 1:00 p.m. to 1:30 p.m.)

(Defs. Ex. 34), 815279 (July 28, 2019 at 5:30 p.m.) (Defs. Ex. 35), and 816373 (August 5, 2019 at 10:30 a.m. and 2:00 p.m.) (Def. Ex. 36).

Defendants, however, anticipate Plaintiff to present his case beyond these times and dates. To the extent that occurs, Defendants will re-assert their failure to exhaust administrative remedies with respect to any other days and times. After doing so, Defendants will also seek a curative instruction from the Court, both at the time and in closing instructions, of what days and times are available for the jury to consider only.

## CONCLUSION

Based on the foregoing and on Defendants' Pre-Trial Memorandum and their to-be-presented case at trial, Defendants maintains that they are entitled to the entry of judgment on their behalf on all claims asserted against them in the above-captioned matter.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

By:  _s/ Mary Katherine Yarish_
MARY KATHERINE YARISH
Deputy Attorney General
Attorney ID #328843

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 783-6315

myarish@attorneygeneral.gov

Date:   December 2, 2024

NICOLE R. DITOMO
Chief Deputy Attorney General
Civil Litigation Section

*Counsel for Defendants*

21

<u>CERTIFICATE OF WORD-COUNT</u>

I, Mary Katherine Yarish, Deputy Attorney General, Office of Attorney General, hereby certify that this brief includes 4,725 words, which complies with the word-count limit described by the local rules and that counsel relied upon the word count feature of the word-processing system used to prepare this certificate.

<u>  *s/ Mary Katherine Yarish*       </u>
MARY KATHERINE YARISH
Deputy Attorney General

<u>CERTIFICATE OF SERVICE</u>

I, Mary Katherine Yarish, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on December 2, 2024, I caused to be served a true and correct copy of the foregoing document titled *Defendants' Trial Brief* to the following:

<u>VIA ECF:</u>
Leticia C. Chavez-Freed, Esq.
The Chavez-Freed Law Office
2600 N. Third Street, Second Floor
Harrisburg, PA 17110
Leticia@chavez-freedlaw.com
*Counsel for Plaintiff*


　*s/ Mary Katherine Yarish*
MARY KATHERINE YARISH
Deputy Attorney General