**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEVIN COIT,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:19-cv-02036** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **JP LUTHER, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Currently before the Court are Defendants' six (6) motions in limine. (Doc. Nos. 112, 114, 116, 118, 120, 122.) For the reasons set forth below, the Court will grant one (1) motion in its entirety (Doc. No. 118), grant one (1) motion in part (Doc. No. 112), deny one (1) motion (Doc. No. 116), and deny as moot the remaining three (3) motions (Doc. Nos. 114, 120, 122).

**I.    BACKGROUND**

Plaintiff Kevin Coit ("Coit") is a state prisoner currently in the custody of the Pennsylvania Department of Corrections ("DOC") at State Correctional Institution Somerset. In November 2019, Coit commenced this action by filing, inter alia, a pro se complaint in which he asserted claims under 42 U.S.C. § 1983 for alleged constitutional violations against numerous DOC employees who worked at State Correctional Institution Smithfield ("SCI Smithfield") while he was incarcerated there from May 2018 through mid-November 2019. (Doc. No. 1.) Although Coit asserted several constitutional claims against numerous Defendants, following the Court's resolution of Defendants' motion to dismiss the complaint (Doc. Nos. 30–32), motion for summary judgment (Doc. Nos. 52, 53), and affirmative defense of failure to exhaust (Doc. Nos. 83, 84), only three (3) Eighth Amendment claims for deliberate indifference to a vulnerability to suicide remain pending against Defendants Correctional Officer Douglas Williams ("Williams"), RN Ralph ("Ralph"), Correctional Officer Christopher Shope ("Shope"), former Superintendent

of SCI Smithfield Jamey Luther ("Luther"), former Deputy Superintendent, and now current Superintendent of SCI Smithfield, Chad Wakefield ("Wakefield"), Unit Manager Bradley Fisher ("Fisher"), and Major Timothy Sunderland ("Sunderland").

First, Coit alleges that at approximately 1:00 p.m. on Saturday, May 4, 2019, he told Williams that he was suicidal, and Williams did not do anything in response. (Doc. Nos. 1 at 4; 41-1 at 31–32.) Later, at approximately 1:30 p.m., Coit showed Williams that he was cutting his wrist with a staple and still nothing was done to provide him with mental health treatment. (Doc. Nos. 1 at 4; 41-1 at 31–32.) Moreover, Ralph told him that he had to "go deeper" before they would care. See (Doc. Nos. 1 at 4; 41-1 at 32).

Second, Coit asserts that at approximately 5:00 p.m. on Sunday, July 28, 2019, he told Shope that he was hearing voices telling him to kill himself, and Shope encouraged him to do so. See (Doc. No. 41-1 at 38); see also (Doc. Nos. 1 at ¶ 14; 71 at 2–3). Shope told Coit "to go ahead and cut up, that he wanted to—he wanted to see how deep [he] could go to see if [he] was serious, see how serious [he] was about ending [his] life." See (Doc. No. 41-1 at 38); see also (Doc. Nos. 1 at ¶ 14; 71 at 2–3). Coit alleges that he was then left inside of his cell "for hours cutting [his] wrists with a staple." See (Doc. No. 1 at 5). He also alleges that he wrote on the walls with blood and threw blood on the window of his cell. See (id.). He further avers that SCI Smithfield staff failed to provide treatment or respond to him because Luther and Fisher "[told] them to ignore [Coit] during bouts of depression and suicide attempts." See (id.).

Third, and finally, Coit alleges that at approximately 10:00 a.m. on Monday, August 5, 2019, he told Luther, Fisher, Wakefield, and Sunderland that he was suicidal. See (Doc. Nos. 1 at 5; 41-1 at 43–44). They responded that they did not care because they did not have to deal with him. (Doc. Nos. 1 at 5; 41-1 at 44–45.) Later that day, at approximately 2:00 p.m., Fisher

approached Coit's cell, and Coit showed him that he had cut his wrists, and the walls were covered in blood, but no action was taken in response.  (Doc. Nos. 1 at 5; 41-1 at 45–46.)

This matter is currently scheduled for jury selection on December 9, 2024.  (Doc. No. 110.)  In accordance with the Court's Trial Scheduling Order, Defendants filed six (6) motions in limine along with supporting briefs.  (Doc. Nos. 112–23.)  Coit filed briefs in opposition to four (4) of those motions.  (Doc. Nos. 124–27.)  Defendants filed two (2) reply briefs relating to two of the motions.  (Doc. Nos. 129, 130.)  The Court heard argument from counsel on the motions during the final pretrial conference on November 21, 2024.  Accordingly, Defendants' motions in limine are ripe for disposition.

## II.    LEGAL STANDARD

"The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on motions in limine prior to trial."  Ridolfi v. State Farm Mutual Auto. Ins. Co., No. 1:15-cv-00859, 2017 WL 3198006, at *2 (M.D. Pa. July 27, 2017) (citations omitted).  A motion in limine permits "the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  See United States v. Tartaglione, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017); see also United States v. Hamdan, 537 F. Supp. 3d 870, 878–79 (E.D. La. 2021) ("[T]he purpose of a motion in limine is to prohibit [an opponent] 'from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.'" (quoting O'Rear v. Fruehauf Corp., 554 F.2d 1304, 1306 n.1 (5th Cir. 1977))).

Moreover,

[o]n a motion in limine, evidence should only be excluded "when the evidence is clearly inadmissible on all potential grounds."  [Tartaglione, 228 F. Supp. 3d at

3

406.]  Evidentiary rulings on motions in limine are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion.  Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994). . . . Further, "[c]ourts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence."  [Ridolfi, 2017 WL 3198006, at *2] (citation omitted).

"A trial court considering a motion in limine may reserve judgment until trial in order to place the motion in the appropriate factual context."  [Tartaglione, 228 F. Supp. 3d at 406] (citation omitted).  "Further, a trial court's ruling on a motion in limine is 'subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer.'"  Id. (citing Luce v. United States, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984)).

See United States v. Larry, 537 F. Supp. 3d 766, 768 (M.D. Pa. 2021).

## III.   DISCUSSION

### A.   Defendants' Motion in limine to Exclude Expert Testimony and Evidence Regarding Coit's Alleged Injuries and Alleged Damages

In their first motion in limine, Defendants request that the Court preclude Coit from introducing evidence that their actions or inactions caused his "physical condition" because such evidence would have to be introduced through expert testimony pursuant to Federal Rule of Evidence 702, and Coit does not have an expert who will testify at trial.  See (Doc. No. 113 at 2–3).  Coit opposes this motion and points out that Defendants have not identified any specific, tangible evidence that they want the Court to exclude.  (Doc. No. 125 at 1–2.)  Coit also argues that he should be permitted to testify about his symptoms and injuries, as well as the nature and timing of his symptoms and injuries, because they relate to the alleged constitutional violations at issue in this case.  (Id. at 3.)  He further asserts that he should be able to testify that he felt his mental and emotional state deteriorate after Defendants' actions, and he experienced depression, anxiety, and increased suicidal thoughts.  (Id. at 4–5.)  Ultimately, Coit requests that the Court reserve ruling on this motion in limine until trial.  (Id. at 5.)

4

The admissibility of the proposed evidence challenged by Defendants is governed, at least in part, by Federal Rules of Evidence 701 and 702.  Under Rule 701, a non-expert witness may only offer "testimony in the form of an opinion" if it is: "[(1)] rationally based on the witness's perception; [(2)] helpful to clearly understanding the witness's testimony or to determining a fact in issue; and [(3)] not based on scientific technical, or other specialized knowledge within the scope of Rule 702."  See Fed. R. Evid. 701.  Rule 702 then provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

See Fed. R. Evid. 702.

When attempting to introduce evidence relating to injuries allegedly suffered due to a defendant's conduct, if "the complexities of the human body place questions as to the cause of the pain or injury beyond the knowledge of the average layperson[,] . . . the law requires that expert medical testimony be employed."  See Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 852 (3d Cir. 1995) (quoting Gradel v. Inouye, 421 A.2d 674, 679 (Pa. 1980)).  Thus, while a plaintiff may testify about what occurred and any symptoms they experienced after the defendant's conduct, see White v. Wireman, 500 F. Supp. 3d 327, 333 (M.D. Pa. 2020) (addressing motion in limine seeking to preclude plaintiff from introducing evidence that he suffered high cholesterol and low fiber after consuming food provided by a correctional facility

that did not comply with his religion, and concluding that plaintiff "could describe the things he ate and the symptoms he experienced thereafter"), "evidence of [a] resulting diagnosis, if any, and its causes are inadmissible unless supported by expert testimony."  See id. (citing Ferris v. Pa. Fed'n Bhd. of Maint. of Way Emps., 153 F. Supp. 2d 736, 746 (E.D. Pa. 2001)); see also Ferris, 153 F. Supp. 2d at 746 (determining that plaintiff could not testify about "any specific medical diagnosis of his mental ailments," such as his depression and anxiety disorder, because those conditions "are complex injuries beyond the knowledge of the average layperson"); cf. Johnson v. Wetzel, 209 F. Supp. 3d 766, 777 (M.D. Pa. 2016) (granting prisoner's motion for a preliminary injunction returning him to general prison population after spending thirty (30) years in solitary confinement after prisoner provided expert's report and testimony that prisoner's time in solitary confinement caused his "problems with concentration, problems with sleep, anxiety, anger, and hopelessness, depression, inability to finish tasks, sadness, and stress").

In the instant case, the Court will grant the motion in part insofar as Defendants seek to preclude Coit from testifying about any specific diagnosis or psychiatric illness allegedly caused by Defendants' conduct because such testimony would have to come from an expert pursuant to Rule 702.[1]  The Court will reserve ruling on the remainder of this motion until the time of trial to place the arguments in the motion in the appropriate factual context.

### B.    Defendants' Motion in Limine to Exclude All Testimony from Bernice Santiago

In their second motion in limine, Defendants request that the Court preclude Coit from introducing any testimony from his sister, Bernice Santiago.  (Doc. Nos. 114, 115.)  The Court will deny this motion as moot because Coit did not list Ms. Santiago as a witness in his pretrial

---

[1]  During the final pretrial conference on November 20, 2024, Coit's counsel indicated that she would instruct Coit not to discuss any diagnoses during his testimony at trial.

memorandum (Doc. No. 131 at 4) and his counsel represented during the final pretrial

conference that Ms. Santiago would not be at witness at trial.

### C. Defendants' Motion in Limine to Exclude Plaintiff's Proposed Exhibit 1

In their third motion in limine, Defendants seek an order preventing Coit from

introducing his proposed exhibit 1, a February 4, 2018 letter from Ms. Luther to Coit relating to a

misconduct appeal he had filed.  (Doc. Nos. 116 at 2; 117 at 2–5.)  Ms. Luther's letter states in

pertinent part as follows:

> RE              Appeal of Misconduct #D181607
>
> My review of your appeal indicates it is based on your belief that:
>
> a.     The procedures employed were contrary to law, department directives, or
>        regulations.
>
> b.     The punishment is disproportionate to the offense.
>
> c.     The findings of fact were insufficient to support the decision.
>
> I have taken the opportunity to review your appeal, the Program Review
> Committee's decision to your appeal, and the entire misconduct packet.
>
> We have discussed this at your cell many times.  Staff are not allowing you to harm
> yourself.  The scratches on your arm do not constitute a serious suicide attempt or
> you would be seen by medical immediately.
>
> [The Program Review Committee] has addressed all of your points of appeal, thus
> there is no new information to consider.
>
> The decisions of the Hearing Examiner and the Program Review Committee are
> upheld.

See (Doc. No. 116-2).

Defendants contend that this letter is irrelevant because it is dated over a year before any

of the incidents at issue in this case, and it does not make any of the elements of Coit's claim

against Ms. Luther or the other Defendants more or less probable.  See (Doc. No. 117 at 3 (citing

7

Fed. R. Evid. 401)).  They also argue that to the extent the letter has any probative value, it is substantially outweighed by the danger of confusing the issues or misleading the jury because the jury would have to "resolve the collateral issue of whether Defendants were deliberately indifferent in 2018, rather than in 2019."  See (id. at 4 (citing Fed. R. Evid. 403)).

Coit opposes this motion, arguing that Luther's knowledge of his prior attempt at self-harm is relevant to whether she was deliberately indifferent and whether Coit had a vulnerability to suicide.  (Doc. No. 126 at 3.)  He also asserts that this evidence would be relevant if Defendants attempted to show that they were unaware of such a vulnerability insofar as Ms. Luther states that "[t]he scratches on [Coit's] arm do not constitute a serious suicide attempt." See (id.; Doc. No. 126-2).  Regarding Defendants' contention that the Court should exclude the letter under Rule 403 because it will confuse and mislead the jury, Coit states that the Court can eliminate any possibility of confusing or misleading the jury by "instruct[ing] the jury that it may consider evidence from prior to the dates at issue to prove both knowledge and deliberate indifference."  See (Doc. No. 126 at 3–4).

The Court will deny this motion in limine.  Contrary to Defendants' argument, Luther's 2018 letter is relevant to Coit's claims.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Here, Luther's knowledge of Coit's actions leading to his misconduct appeal is relevant to whether she knew about his alleged vulnerability to suicide generally.  This general knowledge could have affected her interpretation

of the events at issue on July 28, 2019, and August 5, 2019, and led her to conclude that there was not a strong likelihood that Coit would attempt suicide on those dates.[2]

Although the Court finds that the letter is relevant, that finding does not end the admissibility inquiry because "[t]he [C]ourt may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." See Fed. R. Evid. 403. Although Defendants argue that the letter has the potential to confuse or mislead the jury, their arguments are unpersuasive. Defendants do not explain how admitting the letter into evidence will cause the jury to address a collateral issue of whether Defendants were deliberately indifferent in 2018, rather than in 2019, especially considering the Court will instruct the jury that they are only determining whether there was deliberate indifference on the three dates in question. Overall, Defendants have not shown that the letter's relevance is substantially outweighed by the dangers or confusing or misleading the jury. See Ridolfi, 2017 WL 3198006, at *3 ("Rule 403 underscores the principle that, while evidentiary rulings rest in the sound discretion of the court, that discretion should consistently be exercised in a fashion which favors the admission of relevant proof unless the relevance of that proof is substantially outweighed by some other factors which caution against admission.").

---

[2]  To state it differently, a prison official hearing from an inmate that they intend to commit suicide, when the inmate has never expressed suicidal ideation in the past, might react to this threat of self-harm in a certain way. On the other hand, a prison official who had discussions with the inmate several times about whether staff are allowing the inmate to harm themselves and had reached conclusions about whether the inmate's prior actions constituted serious suicide attempts, might react in a different way to hearing that inmate state that they will commit suicide. In both scenarios, the jury would have to decide what the prison official knew and whether the official was deliberately indifferent during the pertinent period relating to the inmate's claim.

Accordingly, the Court will not exclude the letter under Rule 403 and will deny this motion <u>in limine</u>.[3]

### D.    Defendants' Motion <u>in</u> <u>Limine</u> to Exclude Plaintiff's Proposed Exhibits 2 and 4

Defendants request that the Court preclude Coit from introducing into evidence his proposed exhibit 2, which is a medical report dated May 25, 2018, containing six (6) medical photographs and additional information relating to those photographs.  (Doc. Nos. 118, 118-2, 119.)  The photographs allegedly depict a battery, a paper clip, and pieces of a razor blade inside Coit's stomach.  (Doc. No. 118-2.)  Defendants also challenge Coit's proposed exhibit 4, which appears to be a medical report produced after Coit had an esophagogastroduodenoscopy to remove a battery from his upper gastrointestinal tract on May 13, 2019.[4]  (Doc. Nos. 118, 118-3, 119.)  This report contains what appears to be a drawing of an upper gastrointestinal tract along with seven (7) photographs taken during the procedure.  (Doc. No. 118-3.)  Three (3) of those photographs allegedly show a battery inside Coit's upper gastrointestinal tract.  (<u>Id.</u>)  The report also contains information about Coit, a medical professional's impression of the photographs and/or procedure, and recommendations for future treatment.  (<u>Id.</u>)

Defendants argue that the May 25, 2018 report (proposed exhibit 2) is irrelevant because the photographs in the report were taken and the report itself was prepared approximately a year before the first incident at issue in this case.  (Doc. No. 119 at 3.)  Defendants also contend that

---

[3]  This denial is without prejudice to Defendants objecting to the introduction of the letter at trial should Plaintiff seek to introduce it in a manner not contemplated by this Memorandum.

[4]  It appears likely that the May 25, 2018 report was also produced after Coit underwent an esophagogastroduodenoscopy insofar as the acronym "EGD" is contained in the top left corner of the report.  <u>See</u> (Doc. No. 118-2); Esophagogastroduodenoscopy, Cleveland Clinic, https://my.clevelandclinic.org/health/procedures/22549-egd-procedure-upper-endoscopy (last visited Dec. 3, 2024) (explaining that "EGD" stands for an esophagogastroduodenoscopy).

this report's probative value is substantially outweighed by the danger of confusing or misleading the jury because the jury would have to address a collateral issue of whether they were deliberately indifferent in 2018, instead of in 2019. (Id. at 4.)

Along with these challenges to the May 25, 2018 report, Defendants argue that it, as well as the May 13, 2019 report (proposed exhibit 4), are inadmissible because they are medical records containing undefined medical terms, and their admission would require expert testimony. (Id. at 5.) Defendants point out that Coit has not identified any expert who would discuss and interpret the photographs or information in the reports. (Id. at 6.) Without an expert to discuss them, Defendants argue that the photographs specifically, and the reports generally, are inadmissible. (Id.)

In response to this motion, Coit asserts that the May 25, 2018 report is relevant insofar as it shows Defendants' knowledge of his prior attempt at suicide or self-harm, which is relevant to (1) whether they were deliberately indifferent on the three (3) dates at issue in this case and (2) whether he had a vulnerability to suicide. (Doc. No. 124 at 2–3). Coit also indicates that he intends to introduce the May 25, 2018 report "to show his propensity for suicide attempts." See (id.). As for Defendants' concerns about the report confusing or misleading the jury, Coit points out that the Court can instruct the jury that they should consider this report as relating only to whether he had a vulnerability to suicide. (Id. at 4.)

Coit also disputes that expert testimony is needed for a "jury to understand that swallowing batteries, razor blades and paper clips may indicate a vulnerability to suicide." See (id. at 4). He believes that the two (2) proposed exhibits "clearly and obviously show the inside of [his] anatomy," and the average juror will understand the notes on the documents and that the pictures show razor blades, paper clips, and batteries. See (id.). To the extent that these exhibits

contain medical terms, Coit requests that he be permitted to redact those terms and still introduce the photographs at trial.  (Id. at 4–5.)

In a reply brief, Defendants argue that Coit has indicated that he intends to use the May 25, 2018 report for an improper purpose, namely, as propensity evidence.  (Doc. No. 129 at 2.) They note that this type of evidence is inadmissible under Federal Rule of Evidence 404(b) unless Coit can identify how the evidence is related to a non-propensity purpose.  See (id. (citing United States v. Repak, 852 F.3d 230, 241 (3d Cir. 2017)).  They contend that Coit has failed to identify a non-propensity purpose for this evidence; instead, his "only purpose for using this evidence is to show that if [he] engaged in self-injurious behavior before, he must have been on the dates relevant to this action."  See (id.).

Concerning the necessity of expert testimony, Defendants assert that Coit has not identified any caselaw to support his argument that "medical testimony is not required for the average jurors [sic] to understand either such notes or pictures of razor blades, paper clips, and batteries."  See (id. at 3 (quoting Doc. No. 124 at 4)).  They contend that the caselaw instead shows that "while a witness providing lay testimony may describe what they observe within a record, they cannot interpret or provide opinions on such records."  See (id. (citing United States v. Georgiou, 742 F. Supp. 2d 613, 631–32 (E.D. Pa. 2010) and Ferris, 153 F. Supp. 3d at 746)). Considering that the photographs show unidentified anatomy, and there is no indication about how the photographs were obtained or what they mean, Defendants argue that Coit requires a qualified witness to discuss the photographs in the reports and describe exactly what they show. (Id. at 3–4.)

After considering the parties' contentions and thoroughly reviewing proposed exhibits 2 and 4, the Court will grant the motion in limine and preclude Coit from introducing these

exhibits as evidence during the trial.  Simply put, appropriately describing those reports and the photographs therein to the jury requires "scientific, technical, or other specialized knowledge within the scope of [Federal Rule of Evidence] 702."  See Fed. R. Evid. 701.  Although Coit does not identify how he intends to introduce proposed exhibits 2 and 4 at trial, presumably he would do so through his own testimony.  As Defendants argue, Coit is not a medical professional and, as such, he lacks the scientific, technical or other specialized knowledge necessary to explain to the jury what those photographs portray or what the records describe.[5]

Coit's argument that he could testify about the photographs in the reports because it would be obvious to a jury what they depict is unconvincing.  In the first instance, it is not "obvious" what is depicted in several of the photographs contained in exhibits 2 and 4 just by looking at the photographs.  At best, perhaps one (1) out of the thirteen (13) photographs in the two exhibits—photograph 6 of proposed exhibit 2—shows what could be a paper clip.  However, it could also be a wire, a piece of string, or something else.  It is also not obvious at all which parts of the body are depicted in the photographs.

It appears that the unstated reason why Coit believes that the depictions in the pictures are obvious is because the person who prepared the reports identified the items below the photographs.  For example, photograph 3 of proposed exhibit 2 is described as "Battery within rice," photograph 4 of proposed exhibit 2 is described as "Paper clip/Two pieces razor," and photograph 4 of proposed exhibit 4 is described as "Battery Removed."  See (Doc. Nos. 118-2, 118-3).  Similarly, the report contained in proposed exhibit 2 provides codes for "Foreign body in

---

[5]  Although not raised by Defendants, there also appears to be an issue with how Coit would authenticate proposed exhibits 2 and 4 without an appropriate medical professional.  See Fed. R. Evid. 901 (providing that "the proponent [of a piece of evidence] must provide evidence sufficient to support a finding that the item is what the proponent claims it is").

stomach," which seemingly indicates that the photographs are of Coit's stomach.  See (id.).

Without these statements in the report, particularly the reference to the stomach, it is impossible

to clearly identify the items depicted in the photos or where those items were located unless a

qualified witness testified about them.[6]

      In conclusion, while Coit may testify as to what he did and experienced during relevant

dates and times, he may not testify about his proposed exhibits 2 and 4 because any explanation

of what is contained in those reports, including descriptions or interpretations of the photographs

therein, requires scientific, technical or other specialized knowledge that he does not possess.

Accordingly, the Court will grant this motion in limine and preclude Coit from introducing

proposed exhibits 2 and 4 at trial.

---

[6] There is also an evidentiary problem with the written statements in the reports because those statements constitute hearsay.  See Fed. R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.").  The statements describing what the photographs depict were not made by a declarant "while testifying at the current trial or proceeding."  See id.  In addition, Coit attempts to offer them into evidence to "prove the truth of the matter asserted in the statement[s]," such as the fact that proposed exhibit 2 shows pictures of his stomach and pieces of razor blades, paper clips, and a battery in his stomach.  See id.  Moreover, Coit's testimony would be insufficient to establish any exception to the hearsay rule, such as the business records exception.  See, e.g., Fed. R. Evid. 803(6) ("**Records of a Regularly Conducted Activity**. A record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." (emphasis added)).

**E.    Defendants' Motion in <u>Limine</u> to Exclude Plaintiff's Proposed Exhibits 3, 5, 6, and 8**

In their fifth motion in <u>limine</u>, Defendants ask the Court to exclude Coit's added transcriptions to his proposed exhibits 3, 5, 6, and 8, which are copies of grievances he filed and responses to those grievances.  (Doc. Nos. 120, 121.)  Although Coit filed a response to the motion (Doc. No. 127), his counsel indicated during the final pretrial conference that she was withdrawing the transcriptions.  As such, the Court will deny the motion as moot.

**F.    Defendants' Motion in <u>Limine</u> to Exclude Plaintiff's Proposed Exhibit 9**

For their final motion in <u>limine</u>, Defendants seek to have the Court exclude Coit's proposed exhibit 9, which consists of several nonparty inmate declarations.  (Doc. Nos. 122, 123.)  Coit did not file a response to this motion and his counsel stated during the final pretrial conference that she was withdrawing this proposed exhibit.  Accordingly, the Court will also deny this motion in <u>limine</u> as moot.

**IV.    CONCLUSION**

For the reasons set forth above, the Court will (1) grant in part Defendants' motion in <u>limine</u> seeking to exclude evidence regarding Coit's alleged injuries and alleged damages; (2) deny Defendants' motion in <u>limine</u> to exclude Coit's proposed exhibit 1; (3) grant Defendants' motion in <u>limine</u> to exclude Coit's proposed exhibits 2 and 4; and (4) deny as moot Defendants' motions in <u>limine</u> to exclude (a) any testimony from Ms. Santiago, (b) Coit's added transcriptions to proposed exhibits 3, 5, 6, and 8, and (c) Coit's proposed exhibit 9.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
